UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANHATTAN SAFETY MAINE, INC. and RECOVERY EFFORT, INC.,<br><br>Plaintiffs,<br><br>-against-<br><br>MICHAEL BOWEN, ARIE GENGER, ARNOLD BROSER, DAVID BROSER, individually and as trustee of the GENGER LITIGATION TRUST, ABDG LLC, TEDCO, INC., and JOHN DOES 1-10<br><br>Defendants. | **COMPLAINT**<br><br>Civ. Action No. 19-5642 |

Plaintiffs MANHATTAN SAFETY MAINE, INC. and RECOVERY EFFORT, INC. (together, "Plaintiffs"), by their undersigned counsel, by and for their Complaint against defendants MICHAEL BOWEN, ARIE GENGER, ARNOLD BROSER, DAVID BROSER, GENGER LITIGATION TRUST, ABDG LLC, TEDCO, INC., and JOHN DOES 1-10 (together, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.  This is an action to recover $32.3 million, consisting of $17.3 million in funds and $15 million in promissory notes, obtained by Defendants through fraudulent conveyances and other wrongful means, which properly belongs to the 1993 Orly Genger Trust, more formally called "Trust u/a 12/13/93 f/b/o Orly Genger" (the "Orly Trust").

2.  These assets represent settlement proceeds (the "2013 Settlement Proceeds") of a settlement agreement made in June 2013 (the "2013 Settlement"), in a lawsuit expressly brought, in significant part, "on behalf of" the Orly Trust. The 2013 Settlement purported to resolve various disputes concerning the Orly Trust's beneficial ownership of certain shares in a business called Trans-Resources Inc. ("TRI").

3. In the years preceding the 2013 Settlement, various litigations had been instituted relating to the TRI shares. In broad summary, in 2004, Arie Genger ("Arie") and the Orly Trust had each purchased shares in TRI. In 2008, however, the minority shareholder of TRI, a group of affiliated investors known collectively as the "Trump Group," brought suit in federal court, claiming that the 2004 purchases had violated TRI's Stockholders Agreement and the Trump Group's right of first refusal thereunder, such that the Trump Group was entitled to acquire the shares instead. A separate suit was then filed in New York state court by Arie and Orly Genger ("Orly")—the latter suing in relevant part in a derivative capacity, as trust beneficiary, on behalf of the Orly Trust—with respect to the TRI shares that previously had been acquired by the Orly Trust in 2004.

4. Indeed, for that reason, the 2013 Settlement itself made reference to the latter shares in TRI as the "Orly Trust Shares." Orly, in her personal capacity, never claimed to own any shares of TRI.

5. Arie, but not Orly, received litigation funding from an entity owned by David and Arnold Broser (together, the "Brosers") called ABDG LLC ("ABDG").

6. In February 2013, a few months before execution of the 2013 Settlement, the Delaware Chancery Court had ruled that Arie had no claim to ownership of any TRI shares. In the same ruling, the Delaware Chancery Court indicated that there would be a contempt proceeding held against Arie for continuing to maintain the aforementioned action in New York relating to TRI, in violation of the Delaware Court's Order.

7. Thus, at the time of the 2013 Settlement, the only TRI shares whose ownership was the subject of a live dispute were the "Orly Trust Shares"—*i.e.*, shares in TRI that, if Orly's derivative claims brought on behalf of the Orly Trust in her capacity as trust beneficiary succeeded,

would be deemed property of the Orly Trust. Arie had no interest in any TRI's shares, nor did Arie's litigation funders, the Brosers, and Arie's main interest in entering the 2013 Settlement was to avoid being held in contempt by the Delaware Chancery Court.

8. Despite the foregoing, the entire 2013 Settlement Proceeds reside outside the Orly Trust, and, upon information and belief, are currently in the hands of Defendants. At the time of the 2013 Settlement, as Defendants were well aware, the Orly Trust had significant liabilities, including the Orly Trust's unqualified guarantee of 48% of the principal and interest on a note (the "Note") issued in the face amount of $8.95 million, bearing interest at a rate of 6.06%, made by D & K Limited Partnership ("D & K"), in favor of TPR Investment Associates, Inc. ("TPR").

9. Upon information and belief, of the $17.3 million cash payment, approximately $16.3 million went to Tedco, Inc. ("Tedco"), an entity controlled by the Brosers, and all or virtually all of the remainder went to Arie; the two promissory notes, meanwhile, are being held by Defendant Michael Bowen ("Bowen"), as successor to William Wachtel, who was the original payment agent designated in the 2013 Settlement.

10. This action is brought to restore the 2013 Settlement Proceeds to their rightful owner, the Orly Trust.

## THE PARTIES

11. Plaintiff MANHATTAN SAFETY MAINE, INC. ("Manhattan") is a corporation organized under the laws of Maine and having its principal place of business in Maine.

12. Manhattan has received from TPR an assignment of all right, title, and interest in any funds owed by the Orly Trust to TPR as a result of the Note and the debt evidenced thereby.

13. Plaintiff RECOVERY EFFORT, INC. ("Recovery") is a corporation organized under the laws of Arkansas and having its principal place of business in Arkansas, which is wholly owned by the Orly Trust.

14. Recovery has received from its 100% owner, the Orly Trust, an assignment of all right, title, and interest the Orly Trust has in the 2013 Settlement with respect to the claims that form the subject of this action.

15. Upon information and belief, Defendant MICHAEL BOWEN ("Bowen") is a citizen of the State of New York.

16. Upon information and belief, Defendant ARIE GENGER is a citizen of Florida, who maintains an office in the State of New York.

17. Upon information and belief, Arnold Broser is a citizen of the State of Florida, and a controlling shareholder of Tedco.

18. Upon information and belief, David Broser is a citizen of the State of New York, and a controlling shareholder of Tedco.

19. Upon information and belief, Defendant GENGER LITIGATION TRUST (the "Litigation Trust") is a trust whose trustees are Lance Harris and David Broser, both of whom are citizens of the State of New York. The Litigation Trust is named as nominal Defendant solely to the extent complete relief is necessary.

20. Upon information and belief, Defendant ABDG LLC is a limited liability company whose members are Arnold and David Broser, who are citizens of the State of New York. ADBG is named as a nominal Defendant solely to the extent complete relief is necessary.

21. Upon information and belief, Defendant TEDCO, INC. is a corporation organized under the laws of Nevada, and headquartered in the State of New York, whose controlling shareholders are the Brosers.

22. Upon information and belief, Defendants JOHN DOES 1-10 represent other, currently unknown parties who have received and/or been enriched by the 2013 Settlement Proceeds without providing consideration.

## JURISDICTION AND VENUE

23. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the Plaintiffs and the Defendants are citizens of different States, and the amount in controversy is greater than $75,000.

24. The Court has jurisdiction over this action under 28 U.S.C. § 2201 to the extent Plaintiffs seek declaratory relief.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that (a) one or more Defendants reside in this District, (b) a substantial part of the events or omissions giving rise to the claim occurred in this District, and/or (c) a substantial part of property that is the subject of the action is situated in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

*The 2013 Settlement Resolved Claims Concerning TRI Shares in Which the Orly Trust Claimed an Ownership Interest*

26. The 2013 Settlement represents the culmination of various disputes that arose concerning ownership of certain TRI shares, to which both the Trump Group and the Orly Trust claimed an ownership interest.

27. In particular, as noted above, the Trump Group claimed that, by virtue of various events, it had acquired, or had a right to acquire, certain shares of TRI that purportedly were owned by the Orly Trust (the "Orly Trust Shares"), such TRI shares having previously purportedly been purchased by the Orly Trust from TPR in 2004.

28. At the time of this dispute, Orly personally did not own any shares of TRI.

5

29. Those disputes included an action filed in 2010 (the "2010 Action") in which Orly, in relevant part, in her capacity as trust beneficiary, asserted a *derivative* claim on behalf of the Orly Trust, relating to the Orly Trust's claimed ownership of certain TRI shares. Orly so represented in numerous court papers, including but not limited to the following documents:

   a. The caption of the 2010 Action recited that Orly brought suit, in relevant part, "on behalf of the ORLY GENGER 1993 TRUST."

   b. In her Complaint, Orly recited that she "brings this action on behalf of the Orly Trust as the beneficiary of the Orly Trust to protect her interests thereunder."

   c. Based on her representations to the Court that she was proceeding on behalf of the Orly Trust, on October 26, 2011 Orly secured a temporary restraining order from the New York State Court to enjoin Dalia Genger, Orly's mother and the Trustee of the Orly Trust, from prosecuting in Delaware any action relating to the subject matter of the 2010 Action, which Orly's court papers described as "duplicative" of the 2010 Action.

   d. Thereafter, when defendants in the 2010 Action moved to dismiss Orly's derivative claims for lack of standing, Orly filed an opposition memorandum of law on November 22, 2011 in which she argued that: "as the beneficiary of the Orly Genger 1993 Trust, [Orly] has a right to assert causes of action on behalf of the trust," quoting from a holding in a related case.

   e. Thereafter, at a motion hearing on March 13, 2012, Orly's counsel further argued that Orly had the right to pursue derivative claims on behalf of the Orly Trust, notwithstanding that the Trustee of the Orly Trust was a party to the very same proceeding, stating:

> … [T]here's no question that the Orly Trust is represented. The caption of the case says that Orly is representing both herself and the Orly Trust. The Orly Trust interests are represented here. If the Court agrees with me, it's being represented by me. If the Court agrees with [the Trustee's counsel] Mr. Meister -- I don't think that will happen -- but if it does, it's being represented by Mr. Meister and Dalia. Everyone here, every trustee, every beneficiary is right before the court.

When counsel for the remainderman beneficiary questioned the bona fides of Orly's pleading, Orly's counsel reassured the Court that the lawsuit was indeed for the benefit of the Orly Trust, and if the Court disagreed, then it could only be because it was not "paying attention":

> As far as the fact that Orly is trying to steal from the trust, if your Honor credits that, then honestly it has not [been] paying attention to the last two years of litigation. But I will draw the Court's attention to footnote 7 of page 10 of Orly Genger's second reply memorandum in further support of her motion to enjoin defendants Dalia Genger, the Trump Group and TPR Investments from prosecuting the duplicative Delaware chancery action, where *Orly explains that Orly seeks the reformation of the stipulation of settlement, which would result in the Orly Trust continuing to have the same beneficial interest in its TRI shares that it was intended to have as a result of Arie and Dalia's divorce.*

(Emphasis added).

30. Consistent with the forgoing representations as to the nature of the claims, the 2013 Settlement made clear that, by its terms, the Trump Group would obtain free and clear title to the Orly Trust Shares, *i.e.*, the disputed TRI shares in which the Orly Trust claimed an ownership interest, and in which Orly in her personal capacity did not.

31. Thus, one of the settlement terms was that Defendants Arie and Tedco would take all actions necessary to obtain a judicial declaration that the members of the Trump Group "own all right, title and interest to the shares of [TRI] … purportedly transferred by TPR in October 2004 to … the Orly Genger 1993 Trust (the 'Orly Trust Shares')."

7

*The Trump Group Agreed to Pay $32.3 Million for the Orly Trust Shares*

32. The 2013 Settlement Agreement provided, in relevant part, that the Trump Group would pay $32.3 million and, in exchange, Orly, Arie, and Arie's two litigation funders (the Brosers) and their related entities—defined therein, collectively, as the "AG Group"—would provide the Trump Group with, *inter alia*, a declaration that the Trump Group owns "all right, title and interest (beneficially, of record, and otherwise)" to the TRI shares, and Arie and Orly would provide corresponding waivers of any ownership claims.

33. Despite these broader recitations, the only material consideration that the Trump Group in fact received for the foregoing settlement payment was the release of the derivative claims by Orly, in her capacity as trust beneficiary, with respect to the Orly Trust Shares. As Judge Forrest of this Court found in her January 5, 2015 Opinion & Order in *Genger v. Genger,* C.A. No. 14-cv-5683, "by entering into the 2013 Settlement, Orly monetized her beneficial interest in the Orly Trust shares for $32.3 million …."

34. Although Orly also purported to waive any *individual* claim to ownership of TRI shares in the 2013 Settlement, that waiver was, at most, a mere formality, because Orly never had any individual interest in any TRI shares. To the contrary, in the 2010 Action, Orly, suing in part in her derivative capacity as trust beneficiary on behalf of the Orly Trust, expressly alleged that the shares at issue were "Orly Trust Shares."

35. Similarly, any purported waiver from Arie in the 2013 Settlement was also, at most, a mere formality. More than four months before, on February 11, 2013, the Delaware Court of Chancery had entered judgment in favor of the Trump Group and against Arie Genger in a case entitled *TR Investors, LLC v. Genger*, C.A. No. 6697-CS, holding that Arie had no claim to ownership of any TRI shares. Further, in a prior proceeding in 2011, the Delaware Supreme Court

already had ruled that Arie's ownership position was untenable; it had remanded the action solely to cure jurisdictional deficiencies based on failure to join another necessary party.

36. The only other signatories to the 2013 Settlement were Arnold and David Broser. The Brosers, however, also had no claim whatsoever to any TRI shares; indeed, they never asserted any affirmative claims of any kind.

37. *A fortiori*, the Brosers had no interest in the Orly Trust Shares. The Brosers had provided litigation funding solely to Arie Genger. The Brosers thus had no interest in—and did not have any reason to believe they had any interest in—any recovery upon the Orly Trust shares. David Broser so admitted, having testified as follows:

  a. "Q: Was Orly Genger a borrower from you? A: No."

  b. "Q: Has Ari[e] ever told you that if Orly were to recover money as part of her other litigations that that money would also be pledged or given to him to pay off his debts or otherwise? A: No."

38. Thus, the entire $32.3 million in Settlement Proceeds is properly attributable to the Trump Group's extinguishment of the Orly Trust's claims to beneficial ownership of the Orly Trust Shares.

39. Putting aside that *no* portion of the 2013 Settlement Proceeds is properly attributable to Arie's TRI shares or to any claimed interest of the Brosers, for the reasons previously given, under no circumstances could Defendants reasonably claim that the *entire* $32.3 million is attributable to acquisition of title to Arie's purported TRI shares, and *none* attributable to acquisition of clean title to the Orly Trust Shares.

*Defendants Wrongfully Receive and Retain Assets of the Orly Trust*

40. As described above, despite the fact that the 2013 Settlement concerned, and could only be providing consideration for, the Orly Trust's claim to beneficial ownership of the Orly Trust Shares. Despite the foregoing, the attorney serving as payment agent under the 2013 Settlement, William Wachtel—the same attorney who filed the above-referenced November 22, 2011 memorandum of law on behalf of the Orly Trust—acting at the direction of the Defendants, transferred the funds outside the Orly Trust to a series of entities controlled by the Brosers.

41. The 2013 Settlement "payment" had two components: (a) an upfront payment of $17.3 million, and (b) two promissory notes, each in the amount of $7.5 million, to be paid upon the happening of various events, many of which have not yet occurred. Accordingly, to date, no payment has been made for any amount under either promissory note.

42. Upon information and belief, approximately $16.3 million of the $17.3 million cash payment ended up with Defendant Tedco, a fact only recently discovered. Specifically, on July 1, 2013, the Trump Group made the first $17.3 million payment thereunder. It wired the payment to the client IOLA account of Wachtel Missry LLP (the firm representing Orly in the underlying suit), who then wired it to the Litigation Trust (a trust co-created by Orly and Arie and naming David Broser as a co-trustee), who then wired it to ADBG (the Broser entity designated as lender in the parties' Credit Agreement), and finally all but $1 million of it ended up with Tedco (another entity owned by the Broser family).

43. Upon information and belief, the $16.3 million that was wired to Tedco ultimately was distributed in whole or part to Tedco's controlling shareholders, the Brosers.

44. Upon information and belief, all or virtually all of the remaining funds of this $17.3 million, as was also only recently discovered, went to Arie or an agent or attorney acting on his behalf, *i.e.*, Lance Harris.

45. Upon information and belief, the two promissory notes are currently held by Defendant Michael Bowen, as agent under the 2013 Settlement (in place of William Wachtel, the agent named in the Agreement). Defendant Bowen also continues to purport to act as attorney with respect to derivative claims on behalf of the Orly Trust in a related New York state court proceeding entitled *Orly Genger v. Dalia Genger et al.*, Index No. 109749/2009.

*The Orly Trust Is Liable for at Least $8 Million to Recovery*

46. As discussed at the outset, at the time of the transfers described above, the Orly Trust was indebted to TPR as a result of a debt evidenced by the Note. Recovery is an assignee of TPR's rights to the funds evidenced by the Note.

47. That indebtedness existed—and exists—because the Note provides in relevant part: "Each of the undersigned assumes and becomes liable for the percentage of this Note set forth opposite its respective name, and agrees that the Holder may enforce this Note, to the extent of such liability, as if the undersigned were the Maker thereof."

48. One of the undersigned parties is the Orly Trust, and the percentage set forth opposite its name is 48%. Thus, the Orly Trust is liable for 48% of the principal and accrued interest on the debt evidenced by the Note.

49. Within the past six years, the Orly Trust has acknowledged in a signed writing its continuing obligation of indebtedness to TPR on the Note.

### FIRST CAUSE OF ACTION (BY RECOVERY)
(Declaratory Judgment)

50. Plaintiffs repeat and reallege each of the foregoing paragraphs herein.

51. The Orly Trust contends that the two promissory notes held by Defendant Bowen represent property of the Orly Trust because they were issued in respect of $15 million of the $32.3 million total that the Trump Group agreed to pay as consideration for acquiring all right, title, and interest in the Orly Trust Shares, and only a representative of the Orly Trust has the right and power to obtain such right, title, and interest.

52. To the extent any other party has sought to encumber the notes with liens based upon supposed liabilities of any person or entity other than the Orly Trust, such encumbrances cannot affect or undermine the Trust's right to obtain the note free and clear of any such encumbrances, because Orly has no claim in her personal capacity to the notes.

53. An actual controversy exists between the parties concerning ownership of the promissory notes, the Trustee having made demand on the Defendants to acknowledge the Orly Trust's right to the notes, and the Defendants having declined to do so.

54. The Court should declare that Recovery, as assignee of the Orly Trust's claims concerning the 2013 Settlement Proceeds, is entitled to the notes, free and clear of any encumbrances other than any valid indemnity claim by the Trump Group.

## **SECOND CAUSE OF ACTION (BY RECOVERY)**
(Money Had and Received)

55. Plaintiffs repeat and reallege paragraphs 1-49 herein.

56. Upon information and belief, Tedco received approximately $16.3 million in 2013 Settlement Proceeds, which it distributed in whole or part to the Brosers, and Arie received approximately $1 million in Settlement Proceeds, all of which should have gone to the Orly Trust in respect of the Orly Trust Shares.

57. Tedco, the Brosers, and Arie benefited from such funds.

58. At the time they obtained such benefit, the foregoing Defendants were aware that such benefit belonged to the Orly Trust.

59. The foregoing Defendants cannot retain such funds in equity in good conscience to the detriment of the Orly Trust.

60. As such, Tedco, the Brosers, and Arie liable for restitution to Recovery, in its capacity as assignee of the Orly Trust's claims concerning the 2013 Settlement Proceeds, of money had and received.

## THIRD CAUSE OF ACTION (BY RECOVERY)
(Unjust enrichment)

61. Plaintiffs repeat and reallege paragraphs 1-49 herein.

62. Upon information and belief, Tedco received $16.3 million in 2013 Settlement Proceeds, which it distributed in whole or part to the Brosers, and Arie received roughly $1 million in Settlement Proceeds, all of which should have gone to the Orly Trust in respect of the Orly Trust Shares.

63. Tedco, the Brosers, and Arie provided nothing of value to the Orly Trust to warrant receipt of 2013 Settlement Proceeds generated in respect of a waiver of claims concerning the Orly Trust Shares.

64. The foregoing Defendants benefited from such funds at the Orly Trust's expense. Indeed, Arie's actual benefit was $17.3 million, because in exchange for his directing the $16.3 million to go to the Brosers rather than himself, he paid off a debt to them of the same amount.

65. At the time they obtained such benefit, the foregoing Defendants were aware that such benefit belonged to the Orly Trust.

66. The foregoing Defendants cannot retain such funds in equity in good conscience to the detriment of the Orly Trust.

13

67. As such, Tedco, the Brosers, and Arie are liable for unjust enrichment to Recovery, in its capacity as assignee of the Orly Trust's claims concerning the 2013 Settlement Proceeds.

### FOURTH CAUSE OF ACTION (BY MANHATTAN)
(Fraudulent Conveyance – Debtor & Creditor L. § 273)

68. Plaintiffs repeat and reallege paragraphs 1-49 herein.

69. At the time of the 2013 Settlement, the Orly Trust owed several million dollars to TPR, as evidenced by its 48% share of D & K's principal and interest obligations.

70. Upon information and belief, excluding its interest in the Orly Trust Shares, the Orly Trust lacked sufficient assets to pay that debt at the time of the 2013 Settlement.

71. The Orly Trust either was insolvent, or was caused to be insolvent, when Orly, who was the Orly Trust's representative in the 2010 Action as a plaintiff asserting derivative claims on its behalf, entered the 2013 Settlement causing the entire $32.3 million in 2013 Settlement Proceeds to be placed outside the Orly Trust.

72. The Orly Trust did not receive fair consideration from the Defendants for such transfers.

73. Upon information and belief, the Orly Trust owes no less than $8 million on the debt evidenced by the Note to Manhattan as assignee of TPR, which debt is unpaid.

74. Accordingly, the conveyances of the 2013 Settlement Proceeds to Defendants were fraudulent conveyances with respect to Manhattan, in its capacity as assignee of the Note from TPR, within the meaning of New York Debtor & Creditor Law § 273.

### FIFTH CAUSE OF ACTION (BY MANHATTAN)
(Fraudulent Conveyance – Debtor & Creditor L. § 276)

75. Plaintiffs repeat and reallege paragraphs 1-49 herein.

76. Upon information and belief, the Defendants caused the conveyances of the 2013 Settlement Proceeds to Arie Genger, Tedco, and Bowen to occur with actual intent to hinder, delay, or defraud the present or future creditors of the Orly Trust, including but not limited to TPR.

77. Upon information and belief, the Orly Trust owes no less than $8 million on the debt evidenced by the Note to Manhattan as assignee of TPR, which debt is unpaid.

78. Accordingly, the conveyances of 2013 Settlement Proceeds to Defendants were fraudulent conveyances with respect to Manhattan, in its capacity as assignee of the Note from TPR, within the meaning of New York Debtor & Creditor Law § 276.

### SIXTH CAUSE OF ACTION (BY MANHATTAN)
(Fraudulent Conveyance – Debtor & Creditor L. § 276-a)

79. Plaintiffs repeat and reallege paragraphs 1-49 herein.

80. Upon information and belief, Orly caused the conveyances of 2013 Settlement Proceeds to Arie Genger, Tedco, and Bowen to occur, and such Defendants received such conveyances, with actual intent to hinder, delay, or defraud the present or future creditors of the Orly Trust, including but not limited to TPR.

81. The Orly Trust owes at least $8 million on the debt evidenced by the Note to Manhattan as assignee of TPR, which debt is unpaid.

82. Accordingly, Manhattan, in its capacity as assignee of the Note, is entitled to payment of its reasonable attorneys' fees by Defendants under New York Debtor & Creditor Law § 276-a.

WHEREFORE, Plaintiffs demand that the Court enter judgment:

    a. On the First Cause of Action, declaring that the two promissory notes held by Bowen are property of Recovery as assignee of the Orly Trust, free and clear of any encumbrances;

   b.  On the Second and Third Causes of Action, awarding damages to Recovery, (i) against Tedco and the Brosers in such amounts as are determined at trial, but not less than $16.3 million, and (ii) against Arie in such amounts as are determined at trial, but not less than $1 million on the Second Cause of Action and $17.3 million on the Third Cause of Action;

   c.  On the Fourth and Fifth Causes of Action, pursuant to New York Debtor & Creditor Law § 278, (i) setting aside the relevant conveyances and/or, (ii) annulling the relevant obligations to the extent necessary to satisfy Manhattan's claim, and/or (iii) disregarding the conveyances, and (iv) attaching or levying execution upon the property conveyed to the extent of Manhattan's interest;

   d.  On the Sixth Cause of Action, awarding reasonable attorney's fees to Manhattan;

Together with pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

Dated: New York, New York
   June 17, 2019

               WALDEN MACHT & HARAN LLP

               */s/ Milton Williams*

               By: Milton Williams
                  Daniel A. Cohen
               One Battery Park Plaza, 34th Floor
               New York, NY 10004
               (212) 335-2030
               *Attorneys for Plaintiffs*