

# EMMET, MARVIN & MARTIN, LLP
## COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

John Dellaportas
Tel: 212-238-3000
Fax: 212-238-3100
jdellaportas@emmetmarvin.com

May 22, 2026

**VIA ECF**
Honorable Valerie Figueredo
U.S. Dist. Ct., Southern District of New York
500 Pearl Street
New York, NY 10007

Re: ***Manhattan Safety v. Genger,*** **No. 1:19-cv-5642**

Dear Judge Figueredo:

Pursuant to Docket # 164, we write on behalf of non-parties Sagi Genger, TPR Investment Associates, Inc., D&K GP, and D&K LP (the "Subpoena Recipients") to address the issue of their common interest privilege with other aligned parties. As set forth below, the Bankruptcy Court's adjudication of this privilege was correctly decided, is binding under collateral estoppel, and is also protected under the prudential doctrines of law of the case and comity.

As the Bankruptcy Court held (Exh. A), the Subpoena Recipients share a common legal interest with Dalia Genger, the Orly Genger 1993 Trust, Trustee Michael Oldner, and affiliates (collectively, the "Creditor Group"), arising out of the finding of the U.S. District Court, unanimously affirmed by the Second Circuit, that: "**Orly monetized her beneficial interest in the Orly Trust shares for $32.3 million**." *Genger v. Genger,* 576 F.Supp.3d 488, 501 (S.D.N.Y.), *aff'd,* 663 F.App'x 44 (2d Cir. 2016). Because the District Court's ruling left some degree of ambiguity as to whether the Orly Trust possessed rights to the $32.3 million superior to those of Orly individually, the parties elected—rather than expend resources litigating the issue among themselves—to enter into an Inter-Creditor Agreement dated June 16, 2019, between and among the Orly Trust, Recovery Effort Inc., Manhattan Safety Maine, Inc., Manhattan Safety Company Ltd., TPR Investment Associates, Inc. and Sagi Genger. *See* Exh. B.

The signatories to the Inter-Creditor Agreement share—and have repeatedly confirmed in writing (*see, e.g.,* Exh. C)—a common legal interest and strategy in recovering the $32.3 million that was fraudulently transferred by Orly to third parties, both via their bankruptcy claims and via various legal actions pending in various courts of law including this one.

The common interest privilege is "an extension of the attorney-client privilege." *In re Quigley Co., Inc.,* 2009 WL 9034027, *3 (Bankr. S.D.N.Y. April 24, 2009) (quoting *U.S. v. Schwimmer,* 892 F.2d 237, 243 (2d Cir. 1989)). It "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id.* "The doctrine is limited to situations where multiple parties are represented by separate counsel but share a common interest about a legal matter." *Id.; accord Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 447 (S.D.N.Y. 1995).

EMMET, MARVIN & MARTIN, LLP

"There are two elements of the common interest rule: (1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought were designed to further that interest." *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466, 471 (S.D.N.Y. 2003) (citation omitted). "Once established, the privilege cannot be waived without the consent of all of the parties that share it." *Quigley,* 2009 WL 9034027 at *3 (collecting cases).

As set forth in the accompanying Declaration (Exh. D), the members of the Creditor Group have not consented to disclosure of their confidential common interest privilege communications. These communications reflect the thought processes and legal strategies of their counsel, and were undertaken with the agreement and expectation that they would remain confidential.  It would be highly prejudicial if such communications were disclosed, as they would reveal critical attorney impressions to litigation adversaries; *i.e.,* the very parties who received the fraudulent transfer of the $32.3 million, and who now seek to prevent its recovery.

In *In re Leslie Controls. Inc.,* 437 B.R. 493 (Bankr. D. Del. 2010), the Court held that this kind of common legal strategy establishes not merely a commercial interest, but a common <u>legal</u> interest.  The issue in *Leslie Controls* was whether privileged communications between the debtor and its counsel and various other parties were protected from discovery under the common interest doctrine. *Id.* at 495.  In that case, an insurance company had argued that the parties shared, at most, a common commercial interest and, therefore, the common interest  privilege did not apply to them. *Id.* at 498. The Court disagreed, finding that the parties from whom discovery was sought shared a common legal interest in preserving and maximizing insurance proceeds available to pay claimants. *Id.* at 502. "This is an inherently legal question." *Id.* at 500.

In the *Orly Genger* bankruptcy case, Tedco and aligned parties sought to invade this common interest privilege, demanding discovery in connection with their then-pending application for approval of a settlement under Fed. R. Bankr. P. 9019. The Bankruptcy Court entertained multiple rounds of briefing, evidentiary submissions, and oral argument (Bankr. Dkt. Nos. 293-315, 339), before deciding, in a detailed February 24, 2021 decision, to reject Tedco's argument. Citing to *Leslie Controls,* the Bankruptcy Court held as follows:

> The creditor group contends that their common legal interest has been to expose and remediate the actual and constructive fraud allegedly committed by the debtor transferee parties and in doing so, ultimately to maximize the asset pool available to creditors. That question is an inherently legal question and their efforts to resolve it have been exclusively through litigation and the Court process.…

> They contend that they have undertaken an orchestrated strategy through the litigation to expose and remediate the fraud committed by the debtor transferee parties in having the 32.3 million dollar return. … The members of the creditor group take the position that the 32.3 million dollars belongs to the debtor. They each argue a distinct view as to in what capacity Orly holds the funds or the rights to those funds, that is a personal capacity as a quasi-fiduciary to the Orly Trust or in part as construct trustee for Dalia. Those distinct arguments are each based on a good faith interpretation of the facts which is why they contend that the compromises between the parties have ensued in the form of the written agreement as to how to treat the recovered assets.

EMMET, MARVIN & MARTIN, LLP

> The Court credits that argument and finds that through the intercreditor agreement, the creditor group parties share a common legal interest in seeing recovery of the 32.3 million dollars. That agreement does not merely implicate commercial interests among the parties. …The Court finds that the common interest doctrine applies to the communications falling within the scope of the intercreditor agreement and the Court so orders the record and thus resolves the matter.

Exh. A at 48-50. Thereafter, the Court issued its Rule 9019 ruling, and the common interest ruling was merged into a final, appealable judgment. Tedco and others appealed that judgment, which appeal was denied. *See* SDNY Case #: 1:24-cv-08076-DLC, Dkt. 21.

At the recent hearing, Your Honor inquired as to whether the Bankruptcy Court's common interest decision is controlling upon Tedco in this proceeding. It is under three independent legal doctrines: collateral estoppel, law of the case, and comity. Judge Rakoff's decision in *U.S. v. Walker*, 239 F. Supp. 3d 738 (S.D.N.Y. 2017) illustrates the first doctrine. As explained therein, "[i]n the Second Circuit, for collateral estoppel to apply, "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Id.* at 740 (citation omitted).

With respect to the fourth element of "finality," ever since "Judge Friendly's seminal opinion in *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir.1961), it has been settled that a judgment that is not 'final' in the sense of 28 U.S.C. § 1291 can nonetheless be considered 'final' in the sense of precluding further litigation of issues that were actually 'determined in such a judgment.'" *Walker*, 239 F. Supp. 3d at 740. "More particularly, whether a decision should be treated as final for purposes of collateral estoppel 'turns upon such factors as the nature of the decision (*i.e.,* that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' . . . may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" *Id.* (citations omitted). All of those factors are present here.

The Bankruptcy Court's well-reasoned decision is easily "final" under the *Lummus-Walker* standard. As noted above, it was the product of exhaustive briefing, evidentiary submissions, and argument, and Tedco had the full opportunity to (and did) appeal. Tedco sets forth no good reason why it should be permitted to litigate the same legal issue all over again.

Permitting Tedco to do so would also violate the law of the case. In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988), the Supreme Court held that, while "[a] court has the power to revisit prior decisions of its own or of a coordinate court … as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." (Citation omitted.) No such circumstances exist here. To the contrary, Tedco's attempt to relitigate the findings of the Bankruptcy Court, while contested matters continue before that Court, is an obvious and improper end-run around that Court's jurisdiction, and a gross breach of comity.

Respectfully submitted, *John Dellaportas*