UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - -x


In the Matter of:

ORLY GENGER,                                Main Case No.

        Debtor.                             19-13895-jlg


- - - - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                February 24, 2021

                12:00 PM


B E F O R E:

HON. JAMES L. GARRITY, JR.

U.S. BANKRUPTCY JUDGE

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

Motion to Compel by Thomas Pitta re: Common Interest Privilege filed by Beth Claire Khinchuk on behalf of Sagi Genger (Doc #293)

Transcribed by:  Amber Minton

eScribers, LLC

352 Seventh Avenue, Suite #604

New York, NY 10001

(973)406-2250

operations@escribers.net

A P P E A R A N C E S (ALL TELEPHONICALLY):

REITLER KAILAS & ROSENBLATT LLC

        Attorneys for Debtor

        885 Third Avenue

        20th Floor

        New York, NY 10022


BY:   BRETT VANBENTHYSEN, ESQ.




GERON LEGAL ADVISORS, LLC

        Attorneys for Debtor

        370 Lexington Avenue

        Suite 1101

        New York, NY 10017


BY:   YANN GERON, ESQ.

        JEANNETTE LITOS, ESQ.

PACHULSKI STANG ZIEHL & JONES

    Attorneys for Dalia Genger

    780 Third Avenue

    34th Floor

    New York, NY 10017


BY:   PAUL J. LABOV, ESQ.



TOGUT, SEGAL & SEGAL LLP

    Attorney for Arie Genger

    One Penn Plaza

    Suite 3335

    New York, NY 10119


BY:   FRANK A. OSWALD, ESQ.

    JARED C. BORRIELLO, ESQ.

EMMET, MARVIN & MARTIN LLP

     Attorneys for Sagi Genger and TPR Investment Associates,

     Inc.

     120 Broadway

     32nd Floor

     New York, NY 10271


BY:   THOMAS A. PITTA, ESQ.

     JOHN DELLAPORTAS, ESQ.


POLLOCK COHEN

     Attorneys for Orly Genger 1993 Trust

     60 Broad Street

     24th Floor

     New York, NY 10004


BY:   ADAM POLLOCK, ESQ.

     MAX RODRIGUEZ, ESQ.

TARTER KRINSKY & DROGIN LLP

Attorneys for Deborah J. Piazza, Chapter 7 Trustee

1350 Broadway

New York, NY 10018

BY:    ROCCO A. CAVALIERE, ESQ.

ERIC HERSCHMANN

Attorney for Eric Herschmann

210 Lavaca Street

Austin, TX 78701

BY:    ERIC HERSCHMANN, ESQ.

KASOWITZ BENSON TORRES LLP

Attorneys for Kasowitz Benson Torres LLP

1633 Broadway

New York, NY 10019

BY:    ANDREW R. KURLAND, ESQ.

7

GLENN AGRE BERGMAN & FUENTES LLP

     Attorneys for Michael P. Bowen

     55 Hudson Yards

     20th Floor

     New York, NY 10001


BY:   MICHAEL P. BOWEN, ESQ.



HUGHES HUBBARD & REED LLP

     Attorneys for ADBG, LLC

     One Battery Park Plaza

     New York, NY 10004


BY:   CHRISTOPHER GARTMAN, ESQ.

P R O C E E D I N G S

THE COURT:  All right.  Good afternoon.  It's Judge Garrity.  First, I apologize for keeping you all waiting. We've got on the calendar today the motion to compel -- the so-called motion to compel, which is document number 293.  But it's got 293 and all of the related letters and other documents submitted in connection with that.  As I had indicated a couple of weeks ago, I will -- and I will rule on that matter now.

There are two other matters that we had talked about the last time we were together.  One is the 291.  And then the documents that have been submitted in response to the issues raised in 291, as well as 321.  Now, 321 was the subject of argument some time ago.  So I have the transcripts of all of that.  I will rule on both of those tomorrow at 5 o'clock.

The 321, we've already heard argument.  I'm not sure that I need argument as far as 291 goes.  But I plan to address those matters at 5 o'clock tomorrow.

We received a letter -- the joint letter -- the joint submission from Mr. Cavaliere and Mr. Pitta.

Have you confirmed with the other parties that the proposed timing on the hearing works for the group, either Mr. Cavaliere or Mr. Pitta?

MR. PITTA:  Your Honor, Thomas Pitta here.  We have not.  As was noted in the letter that I sent last night, Mr. Bowen, who is on the line, who is formerly of counsel with us

at this point is a nominal defendant in the adversary proceeding brought by Dalia Genger noted in response to the request for folks to sign off on the hearing date that he wanted to know whether Dalia Genger's deposition was going to be scheduled before agreeing to that hearing schedule. And as I mentioned in the letter, we think the two things are unrelated. But so that was Mr. Bowen's response.

Kasowitz, Mr. Kurland informed us last Friday that they were looking into it. We have not heard back from them since then. Mr. Geron noted that since he left his firm in December it has not yet been determined whether his new firm will counsel for the debtor going forward. And so he was not able to sign off on anything at this point. And we did not hear anything back from Hughes Hubbard, counsel for ADBG. So we --

THE COURT: All right.

MR. PITTA: Well, we put the request out there but haven't really heard much in terms of a response.

THE COURT: Okay. We don't need to get into it now. But we can talk about it tomorrow. And if -- so I would ask if you folks could do that. Right now I have -- that time works for us. And as I would see it, you know, we would have April the 27th, which is a Tuesday. And so then the objections would be due on the 13th. And then the replies by the 20th. So why don't you just note that. We can talk about it tomorrow and

through the -- as we deal with the other matters.

Does anyone else wish to be heard with respect to anything before I then get started on the ruling?

MR. VAN BENTHYSEN:  Your Honor, this is Brett VanBenthysen from Reitler Kailas & Rosenblatt.  We're outgoing counsel for Orly Genger.  I just joined the call because up until six minutes ago, I was having difficulties accessing the CourtSolutions.  So I apologize for being late.

THE COURT:  That's all right.  Thank you.

Mr. Bowen, did you wish to be heard?

MR. BOWEN:  Yes, Judge.  Just briefly.  This is Mike Bowen.  I would like to ask that we add one more thing to the agenda either today or tomorrow.  But we have a letter -- this was actually submitted on behalf of Kasowitz when I was still with the firm in July, regarding Mr. Oldner's deposition.  It's document number 282 on the docket.

And that pointed out that there was obstructionist behavior during Mr. Oldner's deposition and that we wanted and needed some court instructions with respect to that deposition so that we could continue it and get the testimony that had been obstructed by counsel for Mr. Oldner.  That application was never ruled on.  It was kind of set aside while the common interest issue was pending.  But I just don't want to lose track of it.  So I thought I'd raise it.

THE COURT:  All right.  Well, then why don't we

address it tomorrow.  If we need additional submissions, we'll talk about it tomorrow.  But 282 will be put on the list for tomorrow.

MR. BOWEN:  All right.  Thank you.

MR. POLLOCK:  Your Honor, before we -- this is Adam Pollock on behalf of Mr. Oldner.  I would be happy --

THE COURT:  Yes.

MR. POLLOCK:  -- to address that tomorrow.  But I don't understand at this moment who Mr. Bowen represents.  We represent the Orly Genger Trust.  Mr. Bowen, I understand had previously represented Kasowitz.  And I don't think -- for the sake of the record and for this request, is he still representing Kasowitz Benson?

MR. HERSCHMANN:  Your Honor, it's --

THE COURT:  Mr. Herschmann.

MR. HERSCHMANN:  -- Eric Herschmann.  Yeah.

THE COURT:  Yes, Mr. Herschmann?

MR. HERSCHMANN:  I can tell you that I was one of the people that also was involved in the Oldner deposition.  I think the submission -- and Andrew Kurland's on, who's at Kasowitz --I think based on our conversations earlier, we will join in the application.  And it's fully submitted.  We think we need a ruling.

I think if Your Honor looks at the transcript, our estimate was that there was at least an hour and a half of a

deposition of speaking objections. If you look at just the Exhibit A that was attached to 282, I think it will be abundantly clear what happened.

MR. POLLOCK: Your Honor, I'm happy to address this today or tomorrow. But they had a nine-hour deposition, of which --

THE COURT: All right. Excuse me, excuse me.

MR. POLLOCK: -- the first minute --

THE COURT: No, no, no. Wait, wait, wait, wait, wait, wait. I'm sorry, Mr. Pollock. It's fine. We'll do it tomorrow.

MR. POLLOCK: Okay.

THE COURT: We can take it up --

MR. POLLOCK: Thank you, Your Honor.

THE COURT: -- tomorrow and go from there.

Mr. Herschmann, you have your hand up? Oh, no, you don't. Sorry.

All right. Mr. Cavaliere, did you want to be heard?

MR. CAVALIERE: Yes, Your Honor. Very briefly. Just going back to really quickly on the letter.

THE COURT: Could -- yeah, just note your appearance, please.

MR. CAVALIERE: Oh, absolutely. I apologize, Your Honor. Rocco Cavaliere --

THE COURT: That's all right.

MR. CAVALIERE:  -- Tarter Krinsky & Drogin on behalf of Deborah Piazza, Chapter 7 trustee.  The purpose of the letter was just to bring to the Court's attention at least some solidarities with respect to this schedule between the moving parties.  But also, as we noted in the very last paragraph, we certainly welcomed comments from the Court, as well as from other parties to the extent that this schedule did not work and there was legitimate reasons why it could not go forward.  But we thought it was a fair compromise as it relates to a hearing two months from now, which I think should give us more than enough time.

And as I did note in the letter, you know, we are hopeful that it doesn't -- it certainly doesn't have to happen tomorrow because it seems like we have enough on our plate tomorrow.  But one of the key issues is, you know, whether we can -- what -- whether we'll have the Dalia Genger deposition or not.  And hopefully we can maybe tomorrow schedule, if it's okay with the Court, a future conference or hearing on that.

And one other thing I didn't want to lose sight of. Previously, we had discussed with respect to the constructive trust action, which has been fully briefed, the motions to dismiss that action.  Ideally perhaps even tomorrow, if possible, we can set a hearing date for that because I think Your Honor did mention on the February 10th --

THE COURT:  Yes.

MR. CAVALIERE:  -- conference that you might be in a position --

THE COURT:  I did.

MR. CAVALIERE:  -- sometime in the near future to put that on for a hearing.  And that's all --

THE COURT:  Right.

MR. CAVALIERE:  -- I wanted to state.

THE COURT:  That's fine.

Okay.  Anyone else?  All right.  Thank you.

All right.  As I indicated, I've had an opportunity at long last to review all of the papers relating to document 293. And this is my ruling.

Orly Genger as the Chapter 7 debtor herein, Sagi Genger, who I'll refer to as Sagi, and I'll refer to Orly Genger, as Orly, is her brother, and Dalia Genger, who I'll refer to as Dalia, is Orly and Sagi's mother.  On August 17th, 2018, the United States District Court for the Southern District of New York entered judgment in favor of Dalia against Sagi -- that's the Dalia judgment -- in the amount of 6.4 million dollar, plus legal fees.

That same day, the Court also entered a judgment on Sagi's third-party claim against Orly in the amount of 3.2 million dollars, plus legal fees, based on her contractual obligation to indemnify Sagi for fifty percent of the judgment to their mother.  I'll refer to that as the Sagi judgment.  See

Genger v. Genger 2018, WL 3632521, (S.D.N.Y., July 27, 2018). I'll refer to that as the District Court litigation. The Second Circuit affirmed both judgments.

On July 12th, 2019, Orly commenced this Chapter 7 case by filing voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas. That day, Geron -- Sahita -- Sagi, was appointed as the Chapter 7 Trustee of the debtor's bankruptcy estate. I'll refer to him as the prior trustee.

On August 25, 2019, he held and closed a Section 341 meeting of creditors. On September 13, 2019, Sagi filed a motion in the Texas Bankruptcy Court to dismiss Orly's bankruptcy case or alternatively transfer venue of the case to this Court. By order dated September 27, 2019, the Texas Bankruptcy Court transferred the case to this Court.

On December 11, 2019, Deborah Piazza was appointed as the successor Chapter 7 trustee in this case. I'll refer to Ms. Piazza as the trustee.

On April 24th, Sagi filed the amended and updated motion to dismiss and memorandum of law in support. That's docket number 239. I'll refer to that as the motion to dismiss.

On May 21, 2020, the trustee filed her motion for order pursuant to Sections 105, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 9006, and 9019,

approving A, settlement agreement, B, sale of the debtor's estate's causes of action against certain third parties, and C, financing to support the continued administration of the case and D, granting related relief.  I'll refer to that as trustee's motion.  That's at docket number 248.

Broadly speaking, there are three groups interested in the motions.  They consist of one, the trustee and her counsel; two, a group of creditors aligned with Sagi, which I'll refer to as the creditor group parties; and three, a group of interested parties loosely aligned with Orly.  I'll refer to them as the Orly group parties.

The creditor group parties consist of Sagi, Dalia, the Orly Genger 1993 Trust, which I'll refer to as the Orly Genger Trust by Michael Oldner as trustee, TPR Investment Associates, Inc. or TPR, Recovery Effort, Inc. or Recovery, Manhattan Safety Company LTD or MSL, and Manhattan Safety Main, Inc., or MSN.  The debtor group parties consist of Orly, Eric Herschmann, who I'll refer to as Mr. Herschmann, her husband, Kasowitz Benson Torres LLP, referred to as Kasowitz, Mr. Herschmann's former employer, Michael Bowen, a retired Kasowitz partner, Arie Genger, the debtor's father, David Broser, Arnold Broser (ph.), and entities affiliated with the Brosers, including Tedco, Inc. and ADBG, LLC.

The trustee, the creditor group parties, and the debtor group parties are engaged in discovery in connection

with the motion.  In the matters before the Court, the creditor group parties or a subset of those parties seek two discovery rulings.  First, the creditor group parties seek a ruling that various discovery demands seeking confidential communications among the creditor group parties and their counsel were subject to the common interests/joint defense privileges.  Second, Sagi seeks a ruling that communications among Orly, Arie, Mr. Herschmann, the Kasowitz Firm and David Brosan, which I'll collectively refer to as the debtor transferee parties, are not subject to any common interests by joint defense privilege.

In opposing the request for this second ruling, the debtor transferee parties asked the Court for a ruling that their communications with their counsel that would otherwise be protected from disclosure under the attorney client privilege or work product doctrine are subject to the common interest joint defense privilege.

The Court has jurisdiction over this matter pursuant to 28 U.S.C., Sections 1334 and 157(a) and (b)(1) in the amending standing order of reference dated January 31, 2012, Prescott Chief Judge.  This is a court proceeding pursuant to 28 U.S.C. Section 157(b)(2).

Before reviewing the matters, the Court reviews the common interest doctrine.  The common interest doctrine is "an exception to the general rule that voluntary disclosure of confidential privileged material to a third-party waives any

applicable privilege".  HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64, at 71, S.D.N.Y, 2009, quoting Sokol v. Wyeth, Inc., 2008 WL 31662 at 5, (S.D.N.Y., August 4, 2008). The doctrine applies, "Where parties are represented by separate counsel but engaged in a common legal enterprise" Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A. 160 F.R.D. 437 at 447, S.D.N.Y, 1995, see also In Re: Quigley Co., Inc. 2009, WL 9034027 at 3, (Bankruptcy Court S.D.N.Y., April 24, 2009), where the court noted, "The doctrine is limited to situations where multiple parties are represented by separate counsel that share a common interest about a legal matter." The doctrine's an extension of the attorney client privilege that "protects the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." United States v. Schwimmer, 892 F.2d 237 at 243, (2d Cir. 1989).  See also In Re: Sealed Case 676 F.2d 793 at 817, (D.C. Circuit, 1982), where the court noted, "A party waives its work product protection in civil litigation if it discloses the privileged material to anyone without common interest in developing legal theories and analyses of documents.", internal quotation marks omitted.

The common interest doctrine is not an independent source of privilege or confidentiality "if a communication is

not protected by the attorney client privilege or the attorney work product doctrine, the common interest doctrine does not apply.", Sokol v. Wyeth, Inc. 2008 WL 31662 at 5, quoting in Re: Commercial Money Center, Inc. Equipment Leasing Litigation, 248 F.R.D. 532 at 536, Northern District of Ohio, 2008.

The common interest must be legal, not -- must be a legal, not commercial interest, thus it "does not encompass a joint business strategy, which happens to include as one of its elements a concern about litigation."  Bank Brussels Lambert 160 F.R.D. at 447.  See also In Re: FTC 2001 WL 396522 at 5, (S.D.N.Y, April 19, 2001).  The court noted, "Courts have recognized that a business strategy that happens to include a concern about litigation is not a ground for invoking the common interest rule."  "In other words, communications about a business deal, even when the parties are seeking to structure a deal so as to avoid the threat of litigation will generally not be privileged under the common interest doctrine.", Glassman v. CrossFit, Inc. 2012 WL 4859125 at 4 in the Delaware Transferee Court, October 12, 2012.

Privileges should be narrowly construed and expansions cautiously extended.  United States v. Weissman, 195 F.3d 96 at 100, (2d Cir. 1999).  For that reason, "mere cooperation among the parties absent the intent to participate in a joint strategy does not create the requisite ongoing common enterprise".  In Re: Quigley Co, Inc. 2009, WL 9034027 at 3.

Thus, for the common interest doctrine to attach the communications, "most courts insist that the two parties have in common an interest in securing legal advice related to the same matter and that the communications be made to advance their shared interest in securing legal advice on that chronic matter -- common matter, excuse me", First Pacific Networks, Inc. v. Atlantic Mutual Insurance Company, 163 F.R.D. 574 at 582, Northern District of California, 1995, citations omitted.

To demonstrate the applicability of the common interest doctrine, the party invoking it must show one, that it shares a common legal interest with the party with whom the information is shared, and two, the statements for which protection is sought must have been designed to further that interest. See for example HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64, at 471, where the court stated, "Demonstrating the applicability of the common interest doctrine requires a two-part showing. One, the party who asserts the rule must share a common legal interest with the party with whom the information is shared. And two, the statements for which protection is sought must have been designed to further that interest." Gulf Island Leasing v. Bombardier Capital, Inc. 215 F.R.D. at 471, where the court stated, "There are two elements of the common interest rule. One, the party who asserts the rule must share a common legal interest with the party with whom the information is shared,

and two, the statements for which protection is sought were designed to further that interest.", citation omitted.

The common interest rule extends privilege to communications made in the presence of third parties for the purpose of coordinating a defense strategy or pooling information for a common legal purpose.  See Microsoft Corp. v. AT&T Corp, 2015 WL 1539051 at 3, Northern District of Illinois, March 31, 2015.  However, if those elements are not satisfied, the disclosure of the privileged information constitutes a waiver of privilege.  See In Re: Hypnotic Taxis, LLC 566 B.R. 305 at 315, Bankruptcy Court, (E.D.N.Y. 2017), citation omitted.

The party invoking the common interest privilege has the burden of showing with competent evidence that the privilege applies.  See for example Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc. 215 F.R.D. 466 at 472, (S.D.N.Y. 2003).

Turning first to the second issue raised by the creditor group parties.  The Court considers whether the communications among the debtor transferee parties are subject to any common interest joint defense privilege.  In doing so, the Court considers the debtor group parties' assertion that their communications relevant to the motion to dismiss and supplement motion -- in supplement -- excuse me, settlement motion are subject to the common interest doctrine.  The

creditor group asks that each debtor transferee party or counsel be compelled to produce all communications with any other debtor transferee parties or counsel concerning the motion to dismiss, the constructive trust action, the settlement motion, the 2013 settlement agreement, the 15 million dollar truck notes created thereby, and the March 31, 2017 escrow agreement.

Sagi asserts that the debtor transferee parties do not share an enforceable common interest privilege with regard to that matter -- to those matters for three reasons.  First, he contends that the debtor transferee parties' assertion to privilege are untimely.  See ECF Number 9 of 293 at 8.  In support for that contention, he asserts that on March 4, 2020, each of Mr. Herschmann, the Kasowitz Firm, and David Broser on behalf of himself, ADBG, LLC, and the Genger Litigation Trust was served wit ha subpoena duces tecum.  None of them served objections within fourteen days as Rule 45 of the Federal Rules of Civil Procedure requires.

Thus, Sagi contends that the Kasowitz Law Firm, Mr. Herschmann, and David Broser waived their rights to assert application of the common interest doctrine in connection with the motions and the other matters that I have raised because they did not raise it in response to the subpoenas at issue in Sagi's judgment enforcement proceeding.  They cite no support for that contention.  And the Court is not aware of any such

support.  Moreover, and in any event, for the reasons set forth at pages 6 and 7 of the letter of Yann Geron submitted on behalf of Orly, ADBG, LLC, the Kasowitz Law Firm, and Arie -- that's ECF number 301, the Court finds that the Kasowitz Law Firm, Mr. Herschmann, and David Broser, and affiliated entities did not waive the right to assert the common interest privilege.

Second, Sagi contends that Mr. Herschmann cannot assert the common interest privilege because he has taken the position that he's entitled to ask Arie leading questions in his bankruptcy case because he and Arie have established their adversity.  See ECF number 293 at 8, citing to the June 29, 2020 deposition transcript at page 51, lines 10 through 13. It's a matter of record that Mr. Herschmann is adverse to Arie Genger with respect to the 2 million dollar judgment Mr. Herschmann has obtained against Arie.  It appears to be undisputed that the focus of the portion of Mr. Herschmann's examination of Arie during the deposition cited above was related to the 2 million dollar judgment.

Rule 611(c) of the Federal Rules of Evidence permits the use of leading questions when a party is adverse to the witness on a given topic.  The law is clear that there can be no common interest among parties who are adverse to each other. See Netherland Insurance Company v. National Casualty, 283 F.R.V. 412 at 418, Central District of Illinois, 2012.  Thus,

the common interest doctrine does not protect communications between Mr. Herschmann and Arie Genger and/or his counsel on matters relating to the 2 million dollar judgment.  However, it does not follow that Mr. Herschmann is otherwise barred from raising the common interest doctrine.  It matters in which the common interest doctrine otherwise would apply.  See for example, in Re: Rivastigmine Patent Litigation, 2005 WL 2319005 at 4, noting that the common interest doctrine would apply, but only in so far as the parties were in fact identical. "Communications relating to matters to which they held opposing interests would lose any privilege.", citation omitted.

Third, Sagi asserts that even if a common interest privilege had been timely asserted by the debtor transferee parties, it would be patently improper to imply it in this case.  In sum, Sagi contends, "simply put, it is never proper for the debtor to collaborate with her family and friends to prevent the recovery of the estate assets if that is what is happening here." ECF number 293 at 8.  Sagi contends for that reason, the debtor transferee parties are barred from invoking the common interest doctrine.  However, Sagi cites no authority in support of that contention, and the Court is not aware of any such authority.

Rather, in reviewing this matter, the Court will consider whether the debtor transferee parties have demonstrated a right to assert the common interest doctrine

with respect to the matters identified by Sagi.  The Court finds that those parties have a common legal interest with respect to those matters because they've all been accused of fraud, effectuating fraudulent conveyances, and other wrongdoing related to the 2013 settlement agreement, including the 15 million dollar truck note and the March 31, 2017 escrow agreement.  Moreover, they are all joint defendants in the litigation being pursued by and behalf of the creditor group parties.

The 2013 settlement agreement is central to the fraudulent transfer claims that the creditor group parties maintained should be pursued against the debtor transferee parties.  The parties to that agreement include Arie Genger, Orly Genger in her individual capacity and her capacity as beneficiary of the Orly Genger Trust, David and Arnold Broser and all entities managed, owned, and controlled in any way by David and Arnold Broser in which were in any way related to the subject matter thereof.  And prior to the debtor's bankruptcy filing, the Kasowitz firm represented the debtor and has acted on behalf of the parties to the June 2013 agreement with respect to certain matters.

Moreover, the creditor group parties have filed numerous claims against members of the debtor group.  See for example, Dalia Genger v. Sagi Genger, number 17-CV-8181 S.D.N.Y., Manhattan Safety Main, Inc. v. Bowen, et al., number

19-CV-5642 S.D.N.Y., Dalia Genger v. Orly Genger, et al., adversary proceeding number 2001010, Bankruptcy Southern District of New York, and in the Matter of Petition of Dalia Genger as Trustee of the Orly Genger 1992 Trust Agreement dated December 13, 1993 between Arie Genger as guarantor and Lawrence M. Small and Sasha (sic) A. Spencer as trustee to turn over property of the Orly Genger Trust, adversary proceeding number 2001188, Bankruptcy Southern District of New York.

Certain of the common -- excuse me.  Certain of the debtor group parties are codefendants in these lawsuits as applicable.  And moreover, in the motion to dismiss and related filings include matters relating to the conduct of the members of -- the conduct of various of the debtor group parties.  As reflected in the declarations filed by the debtor group parties, in support of their response to the creditor groups' motion -- this is at ECF numbers 305 through 311 -- the debtor group parties have identified common legal interests in the matters cited by Sagi, as those parties are without limitation codefendants in certain of those actions accused of defrauding the estates and its creditors and conspiring to do so, and three accused of having fraudulent transfers of estate property from Orly prior to the petition date.

The petition group parties and/or their counsel have communicated with and among certain of the debtor group parties enter their counsel in anticipation of litigation in response

to litigation and/or in the course of an ongoing common interest. Those communications were made in furtherance of their common interest in joint legal defense. The debtor group parties and their counsel kept the communications confidential and understood that the other -- the debtor group parties and their counsels were doing the same. And none of the debtor group parties consented to disclosure of any of the confidential common interest/joint defense communications between or among the debtor group parties and/or their respective counsel.

Because the debtor group parties are united in their legal defense in common against the legal claims asserted by the creditor group parties, they are entitled to assert a common interest and joint defense privilege in the matters cited by Sagi.

Next, the Court considers whether the various discovery demands seeking confidential communications among the creditor group parties and their counsel are subject to the common interest privilege. Prior to the petition date, Sagi and Dalia were codefendants in multiple lawsuits brought by Orly, in which they were alleged to be joint tortfeasors and coconspirators. See Sagi's declaration, which is filed at ECF number 293-1 at paragraph 5. Those actions included Orly Genger v. Dalia Genger, index number 109749 2009. I'll refer to that as the 2009 action. And Arie Genger v. Sagi Genger,

index 651089 2010.  With respect to the 2009 action, Sagi and Dalia share the same counsel.  Sagi correctly contends -- see Sagi declaration in paragraph 6 -- and neither the trustee nor the debtor group parties dispute that Sagi and Dalia have a common legal interest in those matters.  See for example, Egiazaryan v. Zalmayev 290 F.R.D. 421 at 434, (S.D.N.Y. 2013), where the Court noted, "the clearest indication of common interest is dual representation", quoting American Re-Insurance Company v. United States Fidelity and Guaranty Company, 40 A.D.3d 486 at 491, 837 N.Y.S.2d 616 at 621, First Department, 2007.

As noted, Dalia is the judgment creditor of Sagi.  She and Sagi plainly were adverse to one another in the district court litigation giving rise to that judgment and did not have a common legal interest in that litigation.  However, on the heels of the entry of the Dalia judgment against Sagi, Dalia and Sagi entered in to a settlement agreement dated September 17, 2018, as amended by the first amendment to the settlement agreement dated March 21, 2019.  The Court will collectively refer to those agreements as the settlement agreement.

The stated purpose of the agreement is "for the resolution of the Dalia judgment and all disputes between them".  In substance but without limitation, the settlement agreement provides that the security ultimate collection of the Dalia judgment by Dalia, Sagi shall provide Dalia with security

by pledging assets, the value of which equals or exceeds the amount of the Dalia judgment, including all amounts that Sagi collects in satisfaction of the Sagi judgment against Orly. See the settlement agreement at paragraph 2.

Sagi says that by reason of that agreement and particularly his pledge in the agreement to pay Dalia all sums that he collects in enforcing his judgment against Orly, he and Dalia share a common legal interest in ensuring that he can collect his judgment against Orly because it will fund Dalia's retirement and the process reduce his liability to Dalia on a dollar-for-dollar basis.  See Sagi declaration at paragraph 3.

He also says that he and Dalia have a shared legal interest in Dalia's successful prosecution of her constructive trust adversary proceeding against third-party transferees of the 32.3 million dollars.  That's the adversary proceeding number 20-01010.  See Sagi declaration, paragraph 4.

In that action, Dalia seeks, among other things, the declaratory judgment recognizing a constructive trust and/or equitable lien imposed for her benefit on all property Orly has realized from her beneficial ownership of Dalia's marital claim to the economic benefit of 794.40 shares of Trans-Resources, Inc. which I will refer to as the rights, including the Trump notes, up to 12.25 million dollars plus interest.  She maintains that the proceeds from such rights have been diverted from her and misappropriated by Orly to various third parties.

Even though Dalia's contention is that litigation -- that the proceeds to the rights are her property conflicts with Sagi's view in support of his debt collection action, that those proceeds belong solely -- belong to Orly, Sagi nonetheless contends that he and Dalia share a common legal interest in Dalia's turnover litigation because if successful, Dalia's constructive trust action will also reduce his judgment against Orly on a dollar-for-dollar basis.

Thus, he says he and Dalia share common legal interest in seeing that action succeed as well.  See Sagi declaration, paragraph 4.

Sagi, Dalia, the Orly Genger Trust, and the remaining creditor group parties assert that they share a common legal interest in obtaining the return of the 32.2 million dollars that Orly monetized but then allegedly dissipated to family and friends.  They contend that the transfer of the assets by Orly to the Broser parties, Arie and Mr. Herschmann, constituted fraudulent conveyances.  They maintain that their current shared objective is to recover through litigation those transfers and that the following joint legal interest in recovering -- and that they have a joint legal interest in recovering on their claims from those parties.  They point to the following two legal issues as common to them:  one, whether Orly's assets transfers are fraudulent conveyances, and two, whether Orly made the transfers on her own behalf or on behalf

of the Orly Genger trust.  They argue that the preliminary question of whether the transfers were fraudulent conveyances is an independent legal question that each creditor group party, irrespective of the legal theory at the heart of its claim, has a legal interest in having determined in favor of the transfer being adjudicated as a fraudulent transfer.

That is to say that they maintain that the legal interest that is common to every creditor group party is that each wants the Court to find that the transfers are avoidable transfers, irrespective of the theory underlying the fraudulent transfer claim and whether they have conflicting views on the second issue of whether Orly made the transfers on her own behalf or on behalf of the Orly Genger Trust.

Sagi maintains that the creditor group parties have worked in concert over the last several years for the common legal purpose of exposing and remediating the actual and constructive fraud committed by the debtor transferee parties. He says that the key step in the creditor group party strategy was undertaken on June 11, 2019 when Sagi, seeking to collect on his judgment against Orly, filed a turnover action in the district court litigation.  He says that in that action he is seeking to restore the 32.3 million dollars in fraudulently transferred assets to the debtor.

Sagi also asserts that since the petition date, his attorneys and Dalia's attorneys have confidentially

communicated in furtherance of their alleged common legal interest to among other things, obtain transfer and/or dismissal of this Chapter 7 case to a court in New York either the district court or the bankruptcy court can rule upon the pending application to turn over the 32. (sic) million dollars fraudulently transferred out of the estate by Orly and her cohorts.  See Sagi declaration, paragraph 5.

He says that they also jointly sought to convince the trustee and the prior trustee either A, to pursue recovery of the 32.3 million dollars or B, to permit their attorneys to do so.  See the Sagi declaration, paragraph 5.

Sagi argues that the district court's finding that Orly monetized her beneficial interest in the Orly shares for 32.3 million dollars, see Genger v. Genger, 576 F.Supp. 3d 488 at 501, Southern District of New York 2015, thus ambiguity as to whether the Orly trust had a legal right to the 32.3 million dollars superior to that of Orly personally.  See Sagi declaration, paragraph 9.

It's undisputed that Sagi, Dalia and the Orly Genger Trust take different conflicting positions on the issue of whether Orly made those transfers on her own behalf or on behalf of the Orly Genger Trust.  Sagi maintains that the funds belong to Orly.  Dalia asserts the funds belong to her while the Orly Genger Trust say that the funds are trust assets.

Sagi notes that Orly and the other debtor group

parties argue that the creditor group parties cannot be aligned on the issues relating to the alleged fraudulent transfers because they have brought proceedings to recover the allegedly fraudulent transfers on different grounds. The creditor group party say that those various proceedings are necessary, not because the parties do not share a common legal interest, they are necessary because the transferees have gone to great lengths to cloud the ownership trail of the assets that were fraudulently transferred. They assert that they cannot take the risk that they failed to recover the millions of dollars of allegedly fraudulent transfers because the Court finds that title to the shares or the proceeds thereof vested in the Orly trust rather than Orly individually or vice versa and the creditor group have failed to pursue that party.

Sagi explains that rather than expending the resources litigating the question of title to the trust shares prior to the petition date, Sagi, TPR, the Orly Genger Trust Recovery, Manhattan Safety Maine, Inc. and Manhattan Safety Co., Ltd. executed an intercompany agreement dated June 16, 2019. The parties to the intercompany agreement state that through the agreement, they wished to resolve any potential matters among themselves without needless legal fees and other expenditures. Under the agreement, among other things, TPR sought, transferred, conveyed and assigned and delivered to MSM all of its right, title and interest to any funds owed by the Orly

Genger Trust as a result of this so-called 1993 note and the parties agreed that notwithstanding any provision to the contrary in any agreement, in the event of any recovery, whether by judgment, settlement, by any party on any of the Orly Genger claims or Orly Genger Trust claims of any amount, regardless of the plaintiff who recovers it and/or the legal theory on which it is recovered, the recovery will be paid directly to an escrow account maintained by the escrow agent under the agreement and that upon receipt, the escrow agent shall distribute the recovery under a priority set forth in the agreement and in that priority, the first funds would go in equal amounts to MSM and Sagi Genger until such time as MSM has been paid in full for the 1993 note claim or Sagi Genger has been paid in full for the Orly Genger claims, in each case inclusive of all document and collection costs therefore.

Second, in such amounts that are necessary to pay in full the amounts owed to MSM under the 1993 note or the amounts owed to Sagi under the Orly Genger case may be, once again inclusive of all documented collection costs therefore and third, to recovery, the entity recovery.

In effect, under the intercreditor agreement, the Orly Ganger Trust has agreed to subordinate its right to payment of its claims, the full payment of Sagi's claims against Orly and full satisfaction of the 1993 note.

Sagi says that through the agreement, the creditor

group parties share a common legal interest in the respective claims to recover the allegedly fraudulent transfers because under the agreement, Sagi, Dalia and the Orly Trust have pooled their disparate and conflicting claims to recover the 32.3 million dollars in fraudulently transferred assets from Orly or the Orly Trust both from the proceeds of their respective bankruptcy claims and from the following four legal actions pending in the United States District Court; Dalia Genger v. Sagi Genger at 17-cv-08181, Sagi Genger v. David Broser at 19-cv-06100, Manhattan Safety Main v. Bowen and Recovery Effort, Inc. v. Zeichner Ellman & Krause, the latter being 19-cv-05641. See Sagi declaration at paragraphs 11 and 13.

In sum and substance, the creditor group parties assert that they share a common legal interest in the successful prosecution of each other's claims against Orly and the debtor transferee parties, notwithstanding conflicts among those parties because by application of the settlement agreement and intercreditor agreement, the successful prosecution of any of those claims will redound for the benefit of each of them.

In reviewing the merits of the creditor group parties' claims to the protection afforded by the common interest doctrine, the Court reviews the debtor group parties' objections to the application of the doctrine.

First, the trustee contends that the common interest

doctrine is not applicable here because the parties are not seeking to maximize value of estate assets.  The trustee contends that the bankruptcy courts apply the common interest privilege to advance the principle of maximizing estate value. See ECF Number 299 at page 7.

Based on that premise, the trustee argues that the common interest doctrine is not applicable to the creditor group party because the creditor group party strategy is to push through dismissal of the case, to permit them to proceed the duplicative litigation in the New York courts and that is not a valid common interest purpose and because the creditor group parties are utilizing the common interest doctrine to hide their collusive communications which the trustee says are wreaking havoc on this bankruptcy case to the detriment of all parties.

The trustee says that Sagi cannot claim fraud on the part of the debtor and others in furtherance of dismissing this case and at the same time, refused to produce documents that would potentially reveal some bad faith maneuvers of the creditor group parties in this case.  See ECF Number 299 at page 7.

The Court finds no merit to that contention.  The common interest doctrine exists independent of the Bankruptcy Code.  The trustee cites no authority and the Court is not aware of any such authority to support the proposition that

parties with interest adverse to the estate cannot invoke the common interest doctrine if it's otherwise applicable.

Next, the trustee contends that the creditor group parties cannot invoke the common interest doctrine to protect communications among them and their counsel regarding potential avoidance of fraudulent conveyances because under the Bankruptcy Code, they lack standing to pursue claims against the creditor group parties. He says that only the -- I'm sorry, the trustee says that only she has the standing to do so. See ECF Number 302 at page 2.

The trustee argues that the creditor group parties' legal strategy to control the disposition of the fraudulent conveyance claims to various courts is not a proper legal purpose to which the common interest privilege may apply. As support, the trustee cites to In re Hypnotic Taxi, LLC, 566 B.R. 305 at 315, Bankruptcy Court for the Eastern District of New York 2017 and River Insurance Company v. Columbia Casualty Co., 1995 WL 5792 at 4, Southern District of New York, January 5, 1995. The Court reads those cases to support the proposition that "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation towards a common legal goal". That's River Insurance Company 1995 WL 5792 at 4.

The Court disagrees that those cases support the trustee's assertion that the creditor group parties allege lack

of standing to pursue fraudulent transfer claims bars their resort to the common interest doctrine.  The Court finds no merit to the trustee's contentions.

Courts have held that in order for a joint defense privilege to be applicable, the party asserting it must demonstrate an agreement between the parties privy to the communications that such communications will be kept confidential.  See In re Megan-Racine Associates, Inc. 189 B.R. 562 at 571 and 72, Bankruptcy Court for the Northern District of New York citing cases.

The requisite agreement of confidentiality is inferable from the circumstances.  See In re Megan-Racine Associates, Inc. 189 B.R. at 571 and 72.  See also People v. Fentress 103 Misc.2nd 179 at 192, 425 N.Y. Supp. 2d 485, 483, 1980 where the Court noted, "Not every communication made to a lawyer in his professional capacity is confidential or intended to be so.  As a general rule, the question of privilege, confidentiality depends on the circumstances", citations omitted.

The trustee contends that as no agreement referring -- excuse me -- referencing the common interest privilege between the creditor group parties has been produced, it is unclear whether prior to divulging communications to each other, each party to the communications among the creditor group parties, had agreed to pursue a common interest through a joint defense

strategy and had agreed that such communications would be kept confidential.

However, it's not necessary that a formal written common interest agreement have been entered into in order to invoke -- in order for the parties to invoke the common interest privilege.  It's enough that there's an oral understanding between the parties towards mutual cooperation. See In re Rivastigmine Patent Litigation 2005 WL 22190005 at 4. See for example, Vacco v. Harrah's Operating Co., Inc. 2008 WL 4793719 at 9, Northern District of New York, October 29, 2008, an oral agreement established the common interest.  See also Hanover Ins. Co. v. Rapo & Jepsen Insurance Services, Inc., 449 Massachusetts 609 at 2007 where the Court held that the common law, not a writing creates the common interest privilege.

Through the production of emails among Sagi's counsel and the Orly Genger Trust's counsel, Sagi has demonstrated that a written common interest agreement exists among those parties. As for Dalia, she and Sagi have been codefendants since 2007 in eight legal actions in which the debtor has alleged that they are joint tortfeasors, as noted earlier in at least one such case, they shared the same attorney.

As to all of those actions, the Court infers a common interest in that litigation and the Court finds no merit to the trustee's objection.

The trustee also says that the creditor group's

parties did not file sworn statements delineating some legitimate common interest. Sagi submitted a declaration in support of his assertion that his communications at issue here in the Dalia, the Genger -- Orly Genger Trust and affiliates of the Trust and their respective counsel have been in furtherance of those parties' joint strategy to recover the assets or value or thereof that Orly allegedly fraudulently transferred to the debtor transferee parties. Each of Dalia, Michael Oldner as trustee -- of the Orly Genger Trust and their respective counsel likewise submitted affidavits in support of their respective assertions of the common interest doctrine.

Without prejudice to any interested parties' right to challenge the substance of those declarations at an appropriate time, the Court finds that the creditor group parties have adequately supported their invocation of the common interest doctrine.

The trustee also contends that the Court should compel the creditor group parties, to produce documents in the interest of full transparency in this case. The trustee notes that Judge Friendly once noted, "The conduct of bankruptcy cases not only should be ripe but must seem ripe". In re Ira Haupt & Co., 361 F.2nd 164 at 168, Second Circuit 1996 -- 1966, excuse me.

From there, she argues that the Court should deny application of the common interest doctrine and direct the

creditor group parties to disclose the withheld communications because disclosure of those communications important to the determination of the pending motions before the Court.  The Court disagrees.  The trustee cites to no authority to support that contention and the Court has not located any such authority.

Finally, the trustee and the debtor group parties contend that the creditor group parties have failed to show that there is a common legal interest that is to be protected by the common interest privilege.  It is settled that "Parties may share a common legal interest even if they are not parties to an ongoing litigation".  Schaeffer v. United States, Kato 6 F.3d 34 at 40, (Second Circuit 2015), "Although the distinction between common legal, as opposed to commercial, interest is somewhat murky, a common legal interest has been defined as one in which the parties have been or may potentially become coparties to a litigation or have formed a coordinated legal strategy".  In re Subpoena Duces Tecum served on New York Marine and General Insurance Co., 1997 WL 599399 at 4, Southern District of New York, September 26, 1997, citations and internal credit quotation marks omitted.

In Fresh Delmonte Produce, Inc. v. Delmonte Foods, Inc., 2015 WL 3450045 at 3, Southern District of New York, May 28, 2015, the Court noted that although some cases suggest that a party seeking to invoke the common interest doctrine must

have an identical legal interest.  More recent cases have held that the parties need not have a total identity of interest, as long as a limited common purpose necessitates disclosure to certain parties, quoting Egiazaryan v. Zalmayev, 290 FRD 421 at 434, Southern District of New York 2013, and citing to American Eagle Outfitters, Inc. v. Payless Shoesource, Inc., 2009 WL 376 -- 3786210 at 2, Eastern District of New York, November 12, 2009, for the same effect in In re Megan-Racine Associates, Inc., 189 B.R. at 571 to 72, Judge Gerling noted that "In recognizing the exigencies of the joint-defense privilege, courts have not required a total identity of interest among the participants.  The privilege applies when a limited common purpose necessitates disclosure to certain parties.  Thus, even where a later lawsuit is foreseeable between the co-defendants that does not prevent them from sharing confidential information for the purpose of a common interest".  As I said, that's at 189 B.R. at 571 to 72.

Thus, courts generally do not extend the common interest doctrine to commercial matters that are only tangentially related to or impacted by legal issues.  For example, in Bank of America, N.A. v. Terra Nova Insurance Company., Ltd. 211 F.Supp.2d 493 at 497, Southern District of New York, 2002, the Court refused to extend the doctrine to protect documents involving communications between a bank and insurance company and/or its counsel, respecting the

structuring and effectuation of the letter of credit agreement and the supporting reinsurance. The Court found that the common interest that the bank shared with the insurance company was commercial, not legal in nature as it was, "the structuring and effectuating credit agreement that was appropriately supported by reinsurance policies".

In Walsh v. Northrup Grumann Corp., 165 FRD 16, Eastern District of New York 1996, the common interest doctrine failed on multiple levels including that the common enterprise upon which the parties to the communications were embarked, was a business, not a legal enterprise. The Court found that the written advice at issue principally involved business strategies. It noted that while there was undoubtedly a concern about litigation, the parties were developing a business strategy, one of those components was to avoid litigation if possible, 165 FRD at 19.

Finally, in Bank of Brussels Lambert, 160 FRD 437, the Court declined to extend the common interest doctrine to a memorandum produced by counsel to a bank that was shared with other members of a bank group, the bank group was assessing the risks associated with agreeing to permit an affiliate of the borrower to assume some of the borrower's liability to the bank group. The Court found that while each member of the bank group shared a concern about the threat of shareholder litigation, there was no evidence that the members of the bank

group formulated a joint legal strategy to deal with the possibility.

And noted previously, the creditor group parties assert that their common interest privilege stems from the settlement agreement in the intercreditor agreement.  See ECF Number 293 at 4.  The trustee and the debtor group parties assert that as a matter of logic and common sense, conflicting legal claims and legal theories are not and cannot be sufficient to invoke the common interest privilege.

Dalia and Sagi are adversaries in the district court litigation.  They remain adverse to one another as Dalia is a judgment creditor of Sagi.  The settlement agreement does not alter that dynamic or reflect a common legal strategies amongst Dalia and Sagi regarding the collection of the judgment.  Rather, the central feature of the agreement is Sagi's consent to pledge to Dalia assets, including all amounts that he collects under his judgment against Orly to secure the ultimate collection of the judgment by Dalia.  Thus, the agreement reflects Dalia and Sagi's shared desire to ensure payment of Dalia's judgment.  "A concern to ensure the payment of money is commercial in nature and does not qualify for the protection under the common interest rule".  See Gulf Islands Leasing, Inc. v. Bombadeer Capital Inc., 2015 FRD 466 at 473, Southern District of New York 2003.  The court finding that legal advice was not protected from disclosure under the common interest

doctrine where the advice was calculated to ensure that the sums owed by Gulf to Bombadeer Capital under its own agreements were paid.  The court denied that the interest was legal in nature and overruled the common interest privilege claim.  The court found that "The communications involved the amount of money owed" under the agreements between the parties.

See for example, Johnson v. Maffei, 2002 WL 1728566 at 6.  The court noted that "The shared desire to maximize royalty income is simply not a commercial concern".

The settlement agreement does not support the creditor group's assertion that their communications are protected by the common interest doctrine.  In the intercreditor agreement, the creditor group parties acknowledged that they have conflicting legal claims to the funds at issue in this bankruptcy case.  The debtor group parties assert that the creditor group parties do not even try to harmonize their conflicting legal claims other than saying that they reached an economic accommodation in the intercreditor agreement to share the proceeds of the various claims and lawsuits.

In disputing the contention that they lack common legal interest, the creditor group parties rely heavily on In re Leslie Controls, Inc., 437 B.R. 493, Bankruptcy Court for the District of Delaware, 2010.  That case involved a discovery dispute between insurers and the debtor over whether legal memorandum shared by the debtor pre-petition with an ad hoc

committee of its vested plaintiffs, I'll refer to that as the ad hoc committee, and the debtor's proposed future claimants' representative, I'll refer to that as pre-petition FCR, was protected from discovery by the insurers under the common interest doctrine.  See page 495 -- 437 B.R. at 495.

The legal memorandum was prepared by insurance coverage counsel for the debtor providing the legal advice with respect to the effect of the insurer's likely position on insurance recoveries in bankruptcy.

The debtor ultimately determined that a bankruptcy filing was necessary to deal with mounting liabilities from asbestos personal injury lawsuits and pre-filing, began negotiations with the ad hoc committee and the pre-petition FCR to develop a consensual plan of reorganization.  Those negotiations were successful and the plan of reorganization which the insurers' objected to was then pending before the Court.  437 B.R. at 495.

The insurers sought to discover the memorandum in a number of email exchanges regarding the memorandum, all of the exchanges occurred pre-petition and some occurred prior to the agreement on the plan of reorganization.  437 B.R. at 496.  The debtor, ad hoc committee and pre-petition FCR argued that the communications were protected by the common interest doctrine.

In considering that issue and after consider -- in reviewing that issue and after considering a number of cases,

the bankruptcy court noted that "Broadly speaking, the cases stand for the proposition that the party invoking the common interest doctrine must present evidence that a legal interest is implicated.  If such a legal interest is established then the common interest doctrine will apply even if there are separate or overlapping commercial interests".  437 B.R. at 500.

The insurers argued that the information was that when the information was shared, the parties did not have a common interest because they were adversaries on the issue of insurance proceeds since the information they shared pre-petition and prior to the parties reaching an agreement on the plans -- excuse me, on the terms of the plan of reorganization.

However, the court noted that "The common interest privilege does not require a complete unity of interests among the participants, but it is limited by the scope of the parties' common interest".  437 B.R. at 500 and 501.

Thus, regardless of the ongoing negotiations at the time of the communications, the court found that the operative question was "Whether the debtor shared information with the ad hoc committee and the pre-petition FCR that was related to the parties common legal interest against their common entity, the insurer".  437 B.R. at 502.

The court found that "This question is an inherently legal question.  It involves an analysis of insurance

documents, as well as contract, insurance and bankruptcy law". 437 B.R. at 500.

The court found that "While the debtor, the ad hoc committee and the pre-petition FCR had conflicting interests in the sense that each desired to obtain the largest share of the debtor' assets possible, the parties shared a common interest in maximizing the asset pool which would include insurance proceeds, the size of the pie and the size of the pieces are separate questions.  The parties are in accord as to the former and adversaries as to the letter".  437 B.R. at 500.

The court found that "Because the information contained in the document went to a matter of common interest, that is the size of the asset pool, a common legal interest existed among the parties and the communications were shielded by the common interest doctrine".  See 437 B.R. at 500.

The creditor group contends that their common legal interest has been to expose and remediate the actual and constructive fraud allegedly committed by the debtor transferee parties and in doing so, ultimately to maximize the asset pool available to creditors.  That question is an inherently legal question and their efforts to resolve it have been exclusively through litigation and the Court process.

They say that none of the creditor group parties were bystanders, as all were involved in the litigation directly or indirectly.  They contend that they have undertaken an

orchestrated strategy through the litigation to expose and remediate the fraud committed by the debtor transferee parties in having the 32.3 million dollar return.

The members of the creditor group take the position that the 32.3 million dollars belongs to the debtor. They each argue a distinct view as to in what capacity Orly holds the funds or the rights to those funds, that is a personal capacity as a quasi-fiduciary to the Orly Trust or in part as construct trustee for Dalia. Those distinct arguments are each based on a good faith interpretation of the facts which is why they contend that the compromises between the parties have ensued in the form of the written agreement as to how to treat the recovered assets.

The Court credits that argument and finds that through the intercreditor agreement, the creditor group parties share a common legal interest in seeing recovery of the 32.3 million dollars. That agreement does not merely implicate commercial interests among the parties.

Having made that determination, the Court notes a couple of matters. First, the debtor group parties note that in his deposition testimony, Mr. Oldner testified that the intercreditor agreement is solely an agreement between the parties, not to fight over the -- over money, excuse me.

Mr. Oldner also testified in substance that he understands that the agreement to provide a general outline

of -- he understands that the agreement is to provide a general outline of an agreement that he would be derelict in his fiduciary responsibility if he did not try to renegotiate some portions of the agreement to the Oldner deposition at 310, lines 2 through 9.

If the intercreditor agreement, in fact, is not binding on the parties to the agreement, the debtor group parties are free to ask this court to revisit its assessment of the agreement.

Second, although the Court has determined that the intercreditor agreement gives rise to common legal issues, the privilege extends only to communications that are legal in nature.

Accordingly, based upon all of the foregoing, the Court denies the request for the ruling that the communications among the debtor transferee parties are not subject to the common interest privilege.

The Court finds that the common interest doctrine applies to the communications falling within the scope of the intercreditor agreement and the Court so orders the record and thus resolves the matter.

So we adjourned then until tomorrow at 5 o'clock. Thank you all very much.

MR. LABOV:  Your Honor?

THE COURT:  Yes?

MR. LABOV: Yeah, I'm sorry, this is Paul Labov. There was a notation that went out that said that tomorrow that the hearing was at 4 o'clock. I just want to make sure we're all on the same page as to what time --

THE COURT: Yeah, I'm sorry.

MR. LABOV: -- it's just that I'm --

THE COURT: Yeah, I'm sorry, it would have to be 5. I've got a conflict now at 4 --

MR. LABOV: No problem. No problem.

THE COURT: -- if that's okay with everyone.

MR. LABOV: I just want to make sure we're all -- yeah, that's good.

THE COURT: All right. So 5 o'clock. And the other thing is I noted that there had been the agreement among the parties as it relates to the deposit, right? You sent a letter today.

MR. CAVALIERE: Yes, Your Honor (audio interference).

THE COURT: I'm sorry, Mr. Pitta.

MR. CAVALIERE: Yes, Your Honor. We sent a letter in today with the proposed form of order that had been agreed to between TPR and the Chapter 7 trustee relating to the motion for relief from stay.

THE COURT: Okay. And so that -- all right, so that's been resolved. We'll review that and then tomorrow again, we'll take up 321, 291, 282 and then we'll address the timing

of the hearing on the constructive trust litigation, all right?

MR. CAVALIERE:  Thank you, Your Honor.

MR. LABOV:  Thank you.

MR. CAVALIERE:  One other thing just to note, Your Honor, is that your calendar for tomorrow actually notes that the hearing is on the motion to confirm termination in reference to stay, docket number 258.  I believe that's actually an error.  The actual motion for relief from stay that I believe we were supposed to discuss tomorrow which has been resolved is 322.

THE COURT:  Okay.  Thank you very much.

MR. CAVALIERE:  It's a bit different standard.

THE COURT:  We'll fix that.  Thank you.

UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

THE COURT:  All right.  Thanks a lot.

IN UNISON:  Thank you.

THE COURT:  Bye-bye.

(Whereupon these proceedings were concluded at 6:42 PM)

53

I N D E X

RULINGS:                                    PAGE    LINE

Court denies request for common              50      14

interest privilege

54

C E R T I F I C A T I O N

I, Amber Minton, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

Amber Minton

eScribers

352 Seventh Ave., Suite #604

New York, NY 10001

Date:  February 26, 2021