June 5, 2026

**VIA ECF**

Honorable Valerie M. Figueredo

Re:     *Manhattan Safety Maine, Inc. v. Genger*, No. 1:19-cv-5642 (MKV)(VF)

Dear Judge Figueredo,

We write on behalf of the Broser Defendants in response to the letters filed by Manhattan Safety Maine, Inc. ("MSM"), and non-parties Sagi Genger, TPR Investment Associates, Inc., D&K GP, and D&K LP (the "Subpoena Recipients") (ECF Nos. 171 & 172), regarding the applicability of Judge Garrity's February 24, 2021 decision (ECF No. 171, Ex. A (the "Decision" or "Dec.")), regarding a common interest privilege asserted by Plaintiffs, the Subpoena Recipients (other than D&K GP or D&K LP), Dalia Genger, the Orly Genger 1993 Trust by Michael Oldner as trustee, Manhattan Safety Company, Ltd. (referred to in the bankruptcy as the "Creditor Group"). The Broser Defendants also join in the letter brief by Michael Bowen to the extent applicable to them.

The Subpoena Recipients and Plaintiffs mischaracterize and exaggerate the scope of the Decision,[1] which does not blanketly shield their communications from discovery. The Decision was non-final, subject to numerous exceptions, and made a narrow finding that unspecified communications among the Creditor Group *might* be protected from discovery in the bankruptcy proceeding by the common interest privilege by virtue of a June 16, 2019 "Intercreditor Agreement." The Decision does not preclude this Court from assessing whether *specific* communications sought here are protected by common interest (and it is clear that communications sought by the Broser Defendants are *not*).

The common interest privilege extends attorney client privilege protection to communications between parties "who share[] *the same* legal interest." *Gulf Islands Leasing, Inc. v. Bombardier Cap., Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003) (emphasis added). Courts assess common interest "on a document-by-document basis, and based on 'competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence.'" *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 203 (S.D.N.Y. 2013) (quotation omitted). The party asserting protection must show "that *each responsive document* (1) reflects attorney-client communications, and (2) is subject to the common interest rule." *Id*. (emphasis added). In assessing each document, the privilege is "narrowly construed." *Gulf Islands*, 215 F.R.D. at 471. "The party asserting the common interest rule bears the burden of showing that there was 'an agreement, though not necessarily in writing, embodying a cooperative and common enterprise towards *an identical legal strategy.*'" *S.E.C., Inc. v. Wyly*, No. 10 CIV. 5760 SAS, 2011 WL 3851129, at *1 (S.D.N.Y. June 17, 2011) (emphasis added). Courts have "repeatedly held that communications regarding business matters … do not qualify for protection from discovery under the common interest rule." *Gulf Islands*, 215 F.R.D. at 471. Sharing "a desire to succeed in an action does not create a 'common interest.'" *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y.), on reargument, 187 F.R.D. 148 (S.D.N.Y. 1999). "The law is clear that there can be no common interest among parties who are adverse to each other." (Dec. at 23:22-23); *see* also *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10, 16 (S.D.N.Y. 2022) (common interest

---

[1] The Subpoena Recipients and Plaintiffs also falsely state that the Decision relates to a settlement motion in the bankruptcy. But that motion was not even filed until more than three months after the Bankruptcy Court issued the Decision. *See In re Orly Genger*, No. 19-13895 (Bankr. S.D.N.Y. May 28, 2021), ECF No. 421.

privilege "does not apply where the party that shares a common interest with the party asserting privilege is itself a potentially adverse party").

## I.      This Court May Independently Assess Common Interest.

Collateral estoppel does not prevent this Court from independently assessing whether documents the Subpoena Recipients may seek to withhold are protected by the common interest privilege.  Courts assess privilege on a document-by-document basis, and the Bankruptcy Court did not conclude that any particular document was protected by common interest.  The Subpoena Recipients cannot skirt their burden of showing that any communications they seek to protect are both attorney-client privileged and subject to common interest protection by making a blanket assertion of privilege over entire categories of documents.  *See Chevron*, 296 F.R.D. at 203.

The Decision also was not final; rather, the Bankruptcy Corut made clear that the Decision was tentative, and invited the parties to "revisit" the common interest finding if the Intercreditor Agreement was "not binding on the parties to the agreement."  Dec. at 50:6-9; *see also Owens v. Treder*, 873 F.2d 604, 608 (2d Cir. 1989) (collateral estoppel not applicable to decision subject to relitigation for lack of finality).  No other legal principle compels this Court to adopt the Decision. Bankruptcy court decisions are generally not binding on district courts.  *See Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237 (2d Cir. 1998).  And the law of the case doctrine, which only applies to rulings on the "same issues in subsequent stages *in the same case*," is clearly inapplicable given that this is a different case.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (emphasis added).

## II.     The Bankruptcy Court Decision Is Narrow.

The Bankruptcy Court ruled that "the common interest doctrine applies to the communications falling within the scope of the intercreditor agreement."  Dec. at 50.  However, the Decision was subject to three important carveouts: (1) it was "[w]ithout prejudice to any interested parties' right to challenge the substance of [the supporting] declarations at an appropriate time," *id.* at 40; (2) it found that, if "the intercreditor agreement, in fact, [was] not binding on the parties to the agreement, the debtor group parties [would be] free to ask [the Bankruptcy Court] to revisit its assessment of the agreement," *id.* at 50; and (3) it found that "although the Court [had] determined that the intercreditor agreement [gave] rise to common legal issues, the privilege extend[ed] only to communications that are legal in nature."  *Id.*  The Bankruptcy Court specifically held that it was only "through the [I]ntercreditor [A]greement" that any common interest privilege existed.  Dec. at 49:14-18.  Under that agreement, the Decision held that only attorney-client privileged communications among the Creditor Group *regarding their shared legal interest in establishing that a fraudulent transfer occurred* were potentially protected.  *Id.* at 19:20-22 (citing *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999)).  The Decision also specifically held that communications related to the waterfall provisions in the Intercreditor Agreement, in which the signatories divvied up any litigation proceeds regarding the June 2013 settlement, did *not* qualify for common interest protection because (i) those provisions "[did] not alter" the parties' adversity "or reflect a common legal strateg[y]" and (ii) "ensur[ing] the payment of money is commercial in nature.'"  Dec. at 44:10-45:13 (citation omitted).

The Plaintiffs and Subpoena Recipients have not established that *any*, let alone *every*, document they seek to withhold falls into this narrow category, and it is almost certain that they have communications that fall outside this category.  For example, the Broser Defendants seek

communications related to the (i) the 1993 D&K note; (ii) Sagi's 2008 sales of TRI shares, and (iii) the negotiation of the Intercreditor Agreement. Not only do these communications pre-date the Intercreditor Agreement, many of them long pre-date even the June 2013 settlement. *See Weissman*, 195 F.3d at 99 (no common interest prior to manifestation of joint legal strategy); *Wyly*, 2011 WL 3851129, at *1 ("Where the parties have not yet agreed to proceed jointly on the matter communicated, the common interest rule will not apply.").

### III.    Common Interest Does Not Protect the Requested Documents.

The Decision rested explicitly on an assumed premise that has since proven to be false: that the Intercreditor Agreement was valid. *See* Dec. at 50:6-9. It is false because Oldner was not trustee of the Orly Trust when he signed the Intercreditor Agreement. Oldner purports to have accepted the trusteeship on June 14, 2019 and signed the Intercreditor Agreement on June 16, 2019. But a resigning trustee is required to deliver notice to the new trustee *and* either the grantor (Arie Genger) or beneficiary (Orly Genger) of the trust in-person or by mail. *See* Ex. A, Trust Agreement §§ 7(D)-(G). Similarly, Oldner's acceptance—which could only become valid upon a successful resignation—itself required delivery to the grantor or beneficiary. *Id.* When Oldner signed the Intercreditor Agreement, neither Arie nor Orly had received the resignation or acceptance documentation, and no evidence of such has been produced. Oldner thus lacked authority to sign the Intercreditor Agreement on behalf of the Orly Trust because he was not trustee when he signed. Oldner has also disputed the finality of the Intercreditor Agreement, testifying that it was merely a "general outline" of an agreement, and that he would be "derelict in [his] fiduciary responsibility" to not renegotiate the agreement. *See* Ex. B, Oldner Tr. at 310:2-9. Thus, Oldner did not intend to be bound, and any common interest was vitiated. In addition, the Intercreditor Agreement is voidable and thus not enforcle due to egregious breaches of fiduciary duty as part of the Creditor Group's "nuclear option" "plan." *See* ECF Nos. 139 & 140.[2]

Even if the Subpoena Recipients, Plaintiffs and other members of the Creditor Group share a commercial interest in money as an end, they do not share a common legal interest in the means. *See Gulf Islands*, 215 F.R.D. at 473. And the *legal* interests of the Subpoena Recipients, Plaintiffs and other Creditor Group members are so divergent that there can be no common interest among them. Dec. at 23:22-23. For example, MSM's claims here are based on TPR allegedly being a creditor of the Orly Trust, based on the D&K Note with D&K LP (managed by D&K GP). Thus, TPR (MSM's assignor) is directly adverse to D&K, the Orly Trust and its assignee, Recovery Effort, Inc. Oldner and Dalia, as trustees, are adverse to them too.

### IV.    Any Common Interest Privilege Was Waived.

The Subpoena Recipients, Plaintiffs and other Creditor Group members also waived any privilege by regularly communicating with outside investors regarding their litigation strategy. *See, e.g.*, ECF No. 140, Exs. C (proposal to invest in Genger litigation), H-M (discussing the "nuclear option" strategy to bankrupt Orly and providing litigation updates). By sharing their litigation strategy, the Subpoena Recipients, Plaintiffs and Creditor Group waived any privilege over communications concerning that strategy. *See In re Grand Jury Proc.*, 219 F.3d 175, 184 (2d Cir. 2000) (finding waiver based on "strategic decision to disclose some privileged information").

---

[2] *See, e.g., Genger v. Genger*, 39 Misc. 3d 1235(A), *8-9 (N.Y. Sup. Ct. May 29, 2013); *aff'd Genger v. Genger*, 120 A.D.3d. 1102, 1103-1104 (1st Dep't 2014) (transaction voidable when a fiduciary has a conflict of interest in it).

Respectfully submitted,

*/s/ Christopher Gartman*

*Counsel for Defendants David Broser, Arnold Broser, and Tedco, Inc., and Nominal Defendants ADBG LLC and the Genger Litigation Trust*