# HERSCHMANN BENSON BOWEN LLP

ANDREW R. KURLAND
DIRECT DIAL: (917) 341-4636
AKURLAND@HBB-FIRM.COM

305 BROADWAY, 7TH FLOOR
NEW YORK, NY 10007
(212) 226-4226

TEXAS
NEW YORK
NEW JERSEY

June 5, 2026

**VIA ECF**
Hon. Valerie Figueredo, U.S.M.J.
U.S. District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Manhattan Safety Maine, Inc., et al. v. Genger, et al.,* No. 19-cv-5642-MKV-VF

Dear Judge Figueredo,

I write on behalf of defendant Michael Bowen to respond to the May 22 letters in which plaintiff Manhattan Safety Maine, Inc. ("MSM") and subpoena recipients claim that the common interest privilege shields communications among them and other non-parties (the "Conspirators"). *See* ECF Nos. 171 ("MSM Letter"), 172 ("Dellaportas Letter").[1] As MSM's February 2026 document production has now confirmed, the Conspirators do not share, and have never shared, a common legal interest that legitimately gives rise to any common interest privilege and, in any event, their communications are not privileged under the crime/fraud exception because they were made in furtherance of intentional torts.

As discussed further below, Judge Garrity's February 2021 ruling—for which he did not have the benefit of the newly (and belatedly) produced documents—in no way precludes this Court from making its own privilege determination. Judge Garrity stated in the ruling that it was "[w]ithout prejudice" and explicitly provided that "parties are free to ask th[e] court to revisit its assessment[.]" ECF No. 172-1 at 40:12-16, 50:6-9. Such a tentative and narrow interlocutory ruling in a separate action does not relieve the Conspirators of their burden to prove here that they have a common interest privilege with "competent evidence" and "on a document-by-document basis," *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 203 (S.D.N.Y. 2013). They cannot do so.

## I.     Common Interest Privilege Does Not Shield the Conspirators' Communications.

This past February, MSM produced, among other inculpatory documents, emails from 2016 in which Robin Rodriguez, owner of plaintiff MSM, described a "nuclear option" conspiracy, among himself, his friend and business associate Sagi Genger, Sagi's mother Dalia Genger, and the other Conspirators, to abuse the judicial system in order to drive Sagi's sister Orly Genger into bankruptcy and extort Orly's husband, Eric Herschmann, whom they referred to as the "billionaire husband/lawyer." In an October 2016 email, Rodriguez, referring to a lawsuit Sagi had brought against his sister, wrote to a third party whom he was recruiting to invest in the scheme:

> Sagi had a significant victory in the Federal appeals court in New York….
> Essentially it constitutes what I think I referred to in previous emails as the

---

[1] Bowen also joins in the letter filed today by the Broser Defendants.

> Nuclear Option.…[I]t sets a precedent for [Sagi's and Orly's mother Dalia] to demand another $10 million from each [of Sagi and Orly]. Since [Orly] doesn't have liquidity personally and just has assets in her trust, she would either have to declare bankruptcy or get her billionaire husband/lawyer that she married last month [to] pay the money. Bankruptcy is not a good option for her and her husband because that would open his finances up to discovery which we presume he would not want to do.

Ex. 1 (REIMSM_007025) at 1; *see also* Ex. 2 (REIMSM_007027) at 4 (describing "nuclear option" by which Dalia "will make a decision about demanding a larger amount e.g., $20 million which would bankrupt the daughter"). After successfully driving Orly into bankruptcy to pressure her to drop her lawsuit against Sagi and try to extort Herschmann to pay them off to avoid bankruptcy discovery (goals they did not achieve), they proceeded to argue to Judge Garrity that the bankruptcy should be dismissed because Orly had filed in bad faith.

MSM also produced a memorandum outlining the Conspirators' other plan: first to install their puppet Michael Oldner as trustee of the trust Rodriguez referred to in his email, of which Orly is the beneficiary (the "Orly Trust"); then have Oldner (in breach of his fiduciary duties) form a company to be owned by the Orly Trust that the Conspirators would use to sue other parties, ostensibly on behalf of the Orly Trust; then enter into a sham "inter-creditor agreement" purporting to resolve nonexistent disagreements among themselves; then use the inter-creditor agreement to ensure that Orly and her trust would never receive one penny of the proceeds of the lawsuits, which they would instead distribute among themselves. *See* Ex. 3 (REIMSM_000844). The company Oldner formed at Sagi's and Rodriguez's direction is plaintiff Recovery Effort Inc. ("REI"), and this action is one of the Conspirators' sham lawsuits.

Communications among these Conspirators—in connection with their scheme, through breach of fiduciary duty and deceit and misrepresentation to the Bankruptcy Court and other courts, to misappropriate funds and extort Orly and Herschmann—are not privileged. *See*, *e.g.*, *In re Genger*, 2025 WL 922179, at *38 n. 72 (Bankr. S.D.N.Y. Mar. 25, 2025) ("'At a minimum[], the attorney-client privilege does not protect communications in furtherance of an intentional tort that undermines the adversary system itself.'") (quoting *Madanes v. Madanes,* 199 F.R.D. 135, 149 (S.D.N.Y. 2001)); *see also id.* ("'[T]here is a large body of caselaw that recognizes [the crime-fraud exception's] applicability even to non-fraud intentional torts.'") (quoting *Specialty Minerals, Inc. v. Pleuss-Stauffer AG*, 2004 WL 42280, at *9 (S.D.N.Y. Jan. 7, 2004); *Gulf Islands Leasing, Inc. v. Bombardier Cap., Inc.*, 215 F.R.D. 466, 471–72 (S.D.N.Y. 2003) ("the common interest rule is an extension of the attorney-client privilege" and "is narrowly construed").[2]

---

[2] The communications are not privileged for the additional reason that "[a] concern to ensure the payment of money is commercial in nature and does not qualify for protection under the common interest rule." *Gulf Islands*, 215 F.R.D. at 472–73; *see also* MSM Letter at 3 (asserting a common interest "of seeking to recover the $32.3 million") and Dellaportas Letter at 1 (asserting a common interest "in recovering the $32.3 million"). Plaintiffs and the subpoena recipients rely on *In re Leslie Controls, Inc.*, but that case involved common efforts to expand available insurance proceeds through analysis of contract law and insurance law. 437 B.R. 493, 500 (Bankr. D. Del. 2010). Here, plaintiffs simply purport to share an interest in "recovering" a particular amount of money ($32.3 million). A later Delaware case, *In re Simplexity, LLC*, followed *Gulf Islands* and distinguished *In re Leslie* on that basis. *See*

## II.    Collateral Estoppel Does Not Apply (Nor Does Comity or Law of the Case)

Judge Garrity's February 2021 privilege ruling in an active case that has not reached a final judgment is not preclusive.[3]  *See Hongkong & Shanghai Banking Corp. Ltd. v. Brandt for CFG Peru Invs. Pte. Ltd. (Singapore)*, 2017 WL 6729191, at *2 (S.D.N.Y. Dec. 29, 2017) ("[B]ankruptcy court orders granting or denying discovery… are not final."); *Roseman v. Bloomberg L.P.*, 2016 WL 3866375, at *4 (S.D.N.Y. June 17, 2016) ("plaintiffs…fail to make citation to any authority for the proposition that a court's determination on the waiver of attorney-client privilege…in an active case, in which no final judgment on the merits has been entered, can have a preclusive effect").  Second, the Conspirators' assertion—without authority—that Judge Garrity's October 2024 denial of a Rule 9019 motion was a "final" judgment into which the February 2021 discovery order merged, is not only wrong on the facts—as the 9019 motion to which the Conspirators refer was withdrawn and never ruled upon—it is also contrary to established law.  *See In re Stain-Less, Inc.*, 2025 WL 1952074, at *3 (E.D.N.Y. July 16, 2025) (denial of Rule 9019 motion not a final order because "the litigation continues, and no claims are extinguished"). Third, Judge Garrity's privilege ruling was not "necessary" to the denial of a different Rule 9019 motion, where common interest was not an issue, and therefore has no preclusive effect; indeed, "privilege" and "common interest" do not appear in that 70-page Rule 9019 decision.  *See In re Orly Genger*, No. 19-13895 (JLG) (Bankr. S.D.N.Y.), ECF No. 678; *see also*, *e.g.*, *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 555 n. 1 (2d Cir. 1967) (rejecting "non-party witness['s] conten[tion] that the acceptance of his claims of privilege by the Special Master in the earlier actions…collaterally estops [appellant] from presently contesting his claim of privilege" because "the resolution of the issue in the prior proceeding must have been necessary to the result reached there") (citations omitted).

The 2021 privilege ruling also does not meet the standard for collateral estoppel, because it was "'avowedly tentative.'"  *United States v. Walker*, 239 F. Supp. 3d 738, 740 (S.D.N.Y. 2017) (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)). Judge Garrity relied on limited information from the Conspirators, but his ruling was "[w]ithout prejudice to any interested parties' right to challenge the substance of those declarations at an appropriate time[.]" *Id.* at 40:12-14.  Similarly, Judge Garrity relied on the "intercreditor agreement" in finding a common interest, but held that the "parties are free to ask this court to revisit its assessment of the agreement." *Id.* 50:8-9.  Under these circumstances, this Court plainly will not breach comity by making privilege determinations. And contrary to the Dellaportas Letter, the law of the case doctrine is totally inapplicable for the simple reason that this action is not the same case as the bankruptcy proceeding.  *See In re Google Digital Advert. Antitrust Litig.*, 763 F. Supp. 3d 563, 577 (S.D.N.Y. 2025) (even in consolidated MDL proceeding, "each action is formally a separate case and the law of the case doctrine does not apply in a separate action").[4]

---

584 B.R. 495, 499-501 (Bankr. D. Del. 2018) (trustee shared only a "financial interest, not a legal one" with creditor that "hope[d]" for "its share of the proceeds"; "In *Leslie Controls*, the parties were communicating about *increasing* the available insurance proceeds") (emphasis added).

[3] Contrary to the MSM Letter, Federal law governs collateral estoppel here. *Roseman*, 2016 WL 3866375, at *4.

[4] In the case cited in the Dellaportas Letter, the Supreme Court held only that law of the case applies to "a coordinate court in the same case"—*i.e.*, to transfer decisions. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

3

Respectfully submitted,

/s/ Andrew R. Kurland