

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Christopher Gartman
Partner
Direct Dial: +1 (212) 837-6350
Direct Fax: +1 (212) 299-6350
chris.gartman@hugheshubbard.com

June 10, 2026

**VIA ECF**

Honorable Valerie Figueredo
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *Manhattan Safety Maine, Inc., et al. v. Genger, et al.*,
No. 1:19-cv-5642 (MKV) (VF)

Dear Judge Figueredo:

We write on behalf of defendant Tedco, Inc., regarding the subpoenas Tedco served on Sagi Genger, D&K GP, D&K LP, and TPR Investment Associates, Inc. (the "Subpoena Recipients"), and the Court's June 1, 2026 memo endorsement (ECF No. 190, the "Memo"), regarding the Subpoena Recipients' responses to those subpoenas, because the Subpoena Recipients have failed to comply with the Memo.

On May 29, 2026, Tedco's counsel wrote to the Court noting that, per the Court's direction at the May 11, 2026 discovery conference, on May 13, 2026, Tedco's counsel had provided approximately 150 targeted search terms to counsel for the Subpoena Recipients, and that, subsequently, the Subpoena Recipients' counsel had asserted that running the search terms "yielded approximately 104K hits," but that, when they narrowed the search terms to three unilaterally selected terms (d&k note, manhattan safety, and tri shares), the three terms "yielded 3,888 hits." (ECF No. 186 at 2.) Tedco's counsel further noted that they had followed up, asking the Subpoena Recipients "whether their hit counts were cumulative or de-duplicated," and "whether they could send us a hit report for the search terms so that we might identify any problematic search terms driving the number of hits." (*Id*.) Tedco's counsel further noted that, as of May 29, the Subpoena Recipients had not provided any such hit report. (*Id*.)

In the June 1 Memo, the Court ordered the Subpoena Recipients to "provide a hit report to Defendants by Monday, June 8, 2026." (ECF No. 190 at 2.)

At 6:22 pm on June 8, 2026, counsel for the Subpoena Recipients provided by email a three page .pdf containing three screenshots. (Ex. A.) Each screenshot appears to show the raw count of documents in a Sagi Genger Gmail account responsive to one of only three search terms that were unilaterally selected by the Subpoena Recipients. (*Id*.) Tedco's counsel immediately

followed up, requesting that the Subpoena Recipients provide, as the Court ordered, a hit report for *all* of the search terms that Tedco had proposed, not just the three search terms that the Subpoena Recipients selected without explanation. (Ex. B at 3-4.)

The Subpoena Recipients' counsel responded the next day, asserting that Tedco's counsel had "mischaracterized the court's order." (*Id*. at 3.) Asked to clarify, the Subpoena Recipients' counsel asserted that Tedco had "only ever sought 'hit reports' on [the Subpoena Recipients'] three specified searches," and that Tedco "never previously asked [the Subpoena Recipients] for 150 hit reports [or sought] that relief from the Court." (*Id*.) Neither of these assertions are true. Tedco's counsel pointed this out and asked to meet and confer with counsel for the Subpoena Recipients. (*Id*.)

During the meet and confer call, counsel for the Subpoena Recipients stated that he "interpreted" the Court's order to mean that the Subpoena Recipients only needed to provide a hit report for the three terms that the Subpoena Recipients had unilaterally selected. Counsel further stated that he would consider providing hit reports for additional terms, but only a set that would not "involve [his] client sitting in front of a computer all day." Counsel for Tedco responded Tedco never agreed to limit the hit report to just three search terms that the Subpoena Recipients unilaterally selected, nor did the Court so limit its order. Tedco's counsel thus stated that the Court's Memo was clear and also asked why the Subpoena Recipients were only searching one email account when Sagi Genger has used at least three other email accounts with respect to relevant matters. Counsel for the Subpoena Recipients abruptly hung up on counsel for Tedco less than two minutes after the call started, and it is unclear whether he heard the last request.

In addition to their continued gamesmanship, the Subpoena Recipients' approach and hit reports raise several other concerns.

*First*, it is apparent that counsel for the Subpoena Recipients is permitting his client, Sagi Genger, to perform the searches, without any apparent involvement of counsel. Mr. Genger, of course, has an interest in the outcome of this case—more so than the shell Plaintiffs, as he purports to be the ultimate beneficiary of any recovery pursuant to his sham Intercreditor Agreement with the Plaintiffs and others.

*Second*, the "hit reports" that counsel provided are deficient. For one, it is impossible to discern the actual population of documents that might need to be reviewed based on a given term. This is because it is unclear how Gmail would interpret an open-ended term like d&k note without putting that term in parentheses; Gmail might report as "hits" documents with just the word "note," without "D&K." It also is impossible to discern what the unique population would be because Mr. Genger is running each term separately: there is no way to tell how many documents contain both the terms "d&k note" and "manhattan safety." The overall counts for individual terms are therefore nearly useless for assessing the potential burden on the Subpoena Recipients. Counsel for the Subpoena Recipients should have the data from relevant sources collected and stored in database so that a hit report that provides meaningful information can be generated. If the Subpoena Recipients are concerned about cost, the Subpoena Recipients can turn the raw data over to Tedco's litigation support vendor for confidential processing and storage.

*Third*, once the data is available in a format that allows a meaningful hit report to be run, it will be easy to generate a hit report for *all* of the search terms provided by Tedco, as the Court originally ordered.

*Fourth*, the Gmail account at issue is only one of at least four accounts that Mr. Genger is known to have used to communicate regarding matters relevant to the claims, counterclaims, and defenses in this matter.  It is patently inappropriate for Mr. Genger to search only one of his relevant email accounts, in particular where Mr. Genger is responding not only in his individual capacity, but as the representative of three entities, including TPR, for which Mr. Genger has a dedicated email account that he does not appear to be searching.  The Court should order Mr. Genger to search all four of his known relevant email accounts (which also include at least an @aol account, an @1211park account, and an @TPRinvestments account), any other email addresses that he used to communicate regarding relevant matters, and other data sources likely to contain responsive documents.

*Fifth*, Tedco has not agreed to limit the custodians to just Mr. Genger.  For example, Dalia Genger, Sagi's mother, previously controlled TPR and D&K LP before she gave control of both to Sagi.  TPR also has a Board of Directors and possibly other representatives who may possess responsive documents.  The Subpoena Recipients should identify and search the files of any such representatives who possess responsive documents.

The Subpoena Recipients have willfully failed to comply with a Court order regarding search terms after playing a variety of games regarding their responses to the Subpoenas, which Tedco previously raised with the Court.  Tedco therefore respectfully requests that the Court (1) hold the Subpoena Recipients in contempt; (2) compel the Subpoena Recipients to comply with the Memo and provide a proper hit report encompassing all of the proposed search terms by no later than June 12, 2026, and (3) award Tedco sanctions in a form the Court deems appropriate, which Tedco respectfully suggests should include (a) a daily fee for every day of non-compliance beginning on June 9, 2026 (the day after the Subpoena Recipients were supposed to provide the search term hit report) and (b) Tedco's costs and expenses, including attorneys' fees, incurred in compelling the Subpoena Recipients' compliance.

Respectfully submitted,

*/s/ Christopher Gartman*

*Counsel for defendant Tedco, Inc.*

cc:    All counsel of record (via ECF)

3