SPENCER L. SCHNEIDER, P.C
ATTORNEY AT LAW
469 Seventh Ave., 12ᵗʰ Flr, New York, NY 10018
212-267-6900  Cell: 917-776-4703
sschneider@slsatty.com

June 12, 2026

By ECF

The Honorable Valerie Figueredo
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Manhattan Safety Maine, Inc., et al. v. Genger, et al.,
U.S. District Court, S.D.N.Y., Case No. 19-cv-5642-MKV-VF

Dear Judge Figueredo:

I write on behalf of Plaintiff Manhattan Safety Maine ("MSM").[1] Defendants' submissions provide no reason why this Court should deviate from Judge Garrity's well-reasoned ruling that Defendants cannot force production of privileged materials because the Creditor Parties' communications with each other are protected from disclosure by the common interest doctrine.

*First*, most of Defendants' arguments were already considered and correctly rejected by Judge Garrity for the reasons stated in his decision, including Defendants' theory that the Creditor Parties have no shared legal interest and their arguments about Mr. Oldner's deposition testimony and the supposedly non-binding nature of the intercreditor agreement. Judge Garrity found that "through the intercreditor agreement, the creditor group parties share a common legal interest in seeing recovery of the 32.3 million dollars." Ex. A to ECF 171 at 49:14–18. And Judge Garrity then discussed the same deposition testimony that Defendants again rely on in asking this Court to conclude there is no binding agreement or common interest. *Id.* at 49:19–50:9.

Defendants take issue with the finality of Judge Garrity's order. But, as Defendants' own authority holds, "whether a decision should be treated as final for purposes of collateral estoppel … may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *United States v. Walker*, 239 F. Supp. 3d 738, 740 (S.D.N.Y. 2017) (citation omitted); *see also Kurlan v. C.I.R.*, 343 F.2d 625, 628 n.1 (2d Cir. 1965) ("[G]eneral expressions that only final judgments can ever have collateral estoppel effect are

---

[1] As discussed during the discovery conference held on May 20, 2026, and as indicated in Plaintiff's initial letter (ECF 171), REI reserves all rights.

Hon. Valerie Figueredo
June 12, 2026
Page 2

considerably overstated.").

The collateral estoppel doctrine exists because "permitting the open-ended relitigation of claims and issues in serial lawsuits risks unfairness to the parties, inconsistent judgments, and wasteful expenditure of judicial resources." *Weir v. Montefiore Med. Ctr.*, 2023 U.S. Dist. LEXIS 157038, at \*6 (S.D.N.Y. Sept. 6, 2023)  (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) ("Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.")). Judge Garrity thoroughly considered Defendants' arguments and rejected them. There is no need for this Court to rehear them, and it would be unfair to the Creditor Parties to reopen the issue after Judge Garrity already ruled that they can rely on common interest privilege to protect their communications.

*Second*, even if this Court wishes to independently assess the issue, it should reach the same conclusion for the same reasons as Judge Garrity: under the Intercreditor Agreement, the Creditor Parties have a shared legal interest in obtaining a ruling that Defendants fraudulently transferred to themselves $32 million in settlement funds that do not belong to them. *See* ECF 171 at 3.

That agreement remains in effect and cannot be invalidated by Defendants' new arguments about delivery dates of certain notices. (In any event, these new factual arguments are not true.. Mr. Oldner became Trustee on June 14, 2019; on June 15, he sent a copy by certified mail as required by the Trust document, REI_006987; and on June 16, he signed the Intercreditor Agreement.) Further, Defendants are not parties to the Intercreditor Agreement and have no standing to raise challenges to its validity.[2] Judge Garrity's decision did not (and could not) confer on Defendants the right to challenge the validity of agreements to which they are strangers. Judge Garrity only recognized that if Mr. Oldner later repudiated the Intercreditor Agreement he entered into as trustee, that could be grounds for the court to revisit its decision on common interest. Even then, the Court did not hold that such a finding would retroactively subject all privileged documents to disclosure.

*Third*, Defendants' contention that the Bankruptcy Court did not conclude that any particular document was protected by common interest only serves to confirm that no "document-by-document" showing of privilege is required to assert common interest.

---

[2] *See Red Mt. Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 171 (S.D.N.Y. 2021) ("As it is plainly evident that KKR is the intended direct beneficiary of these contractual provisions and the only party who could sue to enforce them, Red Mountain has no standing as a third-party beneficiary to sue for breach of these provisions."). MSM also disputes Defendants' assertions about Mr. Oldner's authority and the validity of the Intercreditor Agreement. If the Court wishes to entertain Defendants' new arguments about agreements to which they are not parties and notices that have nothing to do with Defendants, MSM respectfully submits that the Court should direct separate briefing on these issues as they are outside the scope of this letter briefing (and this litigation).

Hon. Valerie Figueredo
June 12, 2026
Page 3

Courts regularly assess claims of common interest privilege categorically, and Defendants' authority does not hold otherwise. Rather, in *Chevron v. Donziger*, the court held that "Defendants did not show that the common interest privilege would have protected each and every responsive document at issue here" because "[t]hey submitted no privilege log or description of the documents," but rather "[t]hey simply contended that *no document* in the possession of any of the Ecuadorian attorneys and agents may be produced." 296 F.R.D. 168, 204 (S.D.N.Y. 2013) (emphasis original). Here, in contrast, the Creditor Parties are not categorically refusing to produce any documents on the grounds that every single document in their possession is protected by common interest privilege.

We note that the Broser Defendants do not seek to pierce the privilege with respect to any particular document. Indeed, Defendant Bowen did not even make a discovery request in this case yet nonetheless submitted letter briefing on this issue.

Defendants' argument that "communications related to (i) the 1993 D&K note; (ii) Sagi's 2008 sales of TRI shares, and (iii) the negotiation of the Intercreditor Agreement" must predate any common interest is also mistaken. For one thing, it conflates the date of those documents with the date on which the parties communicated about them. Also, it ignores that common interest may arise even before or without a written agreement (as Judge Garrity clearly held). Further, MSM does not refuse to produce all documents in these categories; it only objects to producing privileged documents.

*Fourth*, the Creditor Parties have not waived privilege through high-level communications with investors about this litigation. The communications were made with the expectation that they would remain confidential.

*Finally*, Defendants do not dispute (and, therefore, concede) that the Creditor Group's common interest communications are also protected by the attorney work product doctrine, which is an independent ground for why they should not be produced.

Respectfully,

Spencer L. Schneider