

# EMMET, MARVIN & MARTIN, LLP

### COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

John Dellaportas
Tel: 212-238-3000
Fax: 212-238-3100
jdellaportas@emmetmarvin.com

June 12, 2026

**VIA ECF**
Honorable Valerie Figueredo
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: ***Manhattan Safety v. Genger, 1:19-cv-5642 (MKV) (VF)***

Dear Judge Figueredo:

We write on behalf of non-parties Sagi Genger, TPR Investment Associates, Inc., D&K GP, and D&K LP (the "Subpoena Recipients") in response to the June 5, 2026 letter from Christopher Gartman, Esq., counsel for defendants Tedco and the Brosers (Dkt. 174) and in further support of our May 22, 2026 letter (Dkt. 171), regarding the common interest privilege.[1]

As set forth in the Subpoena Recipients' May 22, 2026 letter, Tedco's attempt to relitigate the Bankruptcy Court's February 24, 2021 ruling (Dkt. 172-1) that the Subpoena Recipients share a common legal interest with others in recovering the $32.3 million Orly Genger monetized from the shares of the Orly Trust and then fraudulently conveyed to third parties including Tedco and the Brosers, is barred by collateral estoppel, law of the case, and comity.

In his letter, Mr. Gartman spuriously (and without specificity) accuses the Subpoena Recipients of having "mischaracterize[d] and exaggerate[d]" the Bankruptcy Court's ruling. In reality, the Subpoena Recipients attached the entire 52-page decision for this Court's review and quoted directly from it. Apparently, these are stock phrases which Mr. Gartman employs whenever he seeks to evade prior judicial rulings, regardless of context.

Further, at no point did the Subpoena Recipients argue the Bankruptcy Court's decision shields "all" of their documents from production, as Mr. Gartman falsely claims. That Court held that the privilege "applies to the communications falling within the scope of the intercreditor agreement." Dkt. 172-1 at 48-50. Yet rather than respect the ruling, Tedco has served Subpoenas that directly target this category of communications, with the stated goal of finding new "damages" claims against the Subpoena Recipients. *See* May 11, 2026 Tr. at 118:3-6.

---

[1] Andrew Kurland, Esq. also filed a letter on common interest privilege on behalf of defendant Michael Bowen (Dkt. 173). Mr. Gartman's letter improperly "joins in" Mr. Kurland's letter, presumably as a mechanism to circumvent the three-page limit. As Mr. Bowen has not served any document requests upon the Subpoena Recipients, he has no standing to respond to our privilege assertions. Accordingly, we object to Mr. Bowen's involvement in this dispute and, unless the Court otherwise directs, do not intend to respond to Mr. Kurland's letter, except to note that his allegations concerning the Subpoena Recipients being in a supposed "conspiracy" are knowingly false. We reserve the right to seek sanctions.

EMMET, MARVIN & MARTIN, LLP

The Bankruptcy Court's ruling was final. It was merged into a final, appealable judgment, which Tedco appealed and lost. *See* SDNY Case #: 1:24-cv-08076-DLC, Dkt. 21.[2]  Having done so, Tedco cannot now ask this Court to treat the ruling as "narrow" or "tentative."  It was most certainly not that.  Nor did Judge Garrity "invite" parties to "revisit" his ruling as Mr. Gartman claims.  Here is the full quote which Mr. Gartman selectively quotes:

> **"If the intercreditor agreement, in fact, is not binding on the parties to the agreement, the debtor group parties are free to ask this court to revisit its assessment of the agreement."**  Dkt. 172-1 at 50.

In other words, the Bankruptcy Court merely preserved the possibility that the Court could revisit its assessment of the agreement—not revisit the legal ruling itself.  Thereafter, no  party sought to revisit the decision, and thus it became final and binding, satisfying all four elements of the Second Circuit collateral estoppel standard. *See U.S. v. Walker*, 239 F. Supp. 3d 738, 740 (S.D.N.Y. 2017) (citing *Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 89 (2d Cir.1961)).

Mr. Gartman also argues that the Supreme Court's holding in *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 817 (1988) that "courts should be loath" to "revisit prior decisions of … a coordinate court" because this is not the "same case" as the Bankruptcy Court, ignoring the fact that the Supreme Court expressly addressed this situation, holding that "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Id.* at 816.  Here, jurisdiction over plaintiffs' claims in this case was before the Bankruptcy Court when the common-interest ruling was made.  For Tedco to now suggest that Court is not a "coordinate court" is offensive and incorrect.

Further, Mr. Gartman also argues that the Bankruptcy Court's common interest  cannot apply to communications regarding the D&K note and the 2008 TRI-share sales to the extent they predate the Intercreditor Agreement. However, the Bankruptcy Court expressly held that the common interest also applied to any <u>joint defense</u> communications: "**As for Dalia, she and Sagi have been codefendants since 2007 in eight legal actions in which the debtor has alleged that they are joint tortfeasors … As to all of those actions, the Court infers a common interest in that litigation and the Court finds no merit to the trustee's objection**." Dkt. 172-1 at 39.  At the May 11, 2026 hearing, this Court agreed that such joint defense communications are privileged and "[s]o we don't need to address that."  May 11, 2026 Tr. at 42:20-43:24.

---

[2]  It is measure of the sheer dishonesty of his letter that, in a footnote, Mr. Gartman falsely accuses the Subpoena Recipients of "falsely stat[ing] that the Decision relates to a settlement motion in the bankruptcy. But that motion was not even filed until more than three months after the Bankruptcy Court issued the Decision" (citing to Bankr. Case No. 19-13895, Dkt. 421).  Mr. Gartman was an active lawyer in that case, and thus surely he recalls that Docket #421 was an <u>amended</u> Rule 9019 motion, the original of which was filed at Docket #248 on May 21, 2020, some nine months <u>before</u> the Bankruptcy Court's common interest ruling.  Even if Mr. Gartman somehow "forgot" what that discovery dispute was about, the Bankruptcy Court's decision provides a reminder: "On May 21, 2020, the trustee filed her motion for order pursuant to Sections 105, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 9006, and 9019, approving A, settlement agreement…. The trustee, the creditor group parties, and the debtor group parties are engaged in discovery in connection with the motion." Dkt. 172-1 at 15-17.

EMMET, MARVIN & MARTIN, LLP

This is significant because the D&K note and the 2008 TRI-share sales were each subject of a Tedco/Broser-funded lawsuit against Sagi, Dalia and other members of the Creditor Group. In each of those suits, after massive discovery, the Tedco/Broser-funded plaintiffs (Arie and Orly) lost in absolute fashion, with judgment rendered in favor of the Creditor Group defendants on all of the Tedco/Broser-funded claims. *See Genger v. Genger*, 208 A.D.3d 410 (1st Dep't 2022) (dismissal of all claims relating to D&K note); *Genger v. Genger*, 121 A.D.3d 270 (1st Dep't 2014) (dismissal of all claims relating to 2008 TRI-share sales).

At some point, every litigation must come to an end.  If Tedco and the Brosers have an explanation for why they took $32.3 million that does not belong to them, without court approval, which they then tried to conceal, they should lay it out for this Court.  Whatever their explanation, revisiting all their prior litigation losses will not reveal any evidence for it.

Next, Mr. Gartman argues that "[e]ven if the Subpoena Recipients, Plaintiffs and other members of the Creditor Group share a commercial interest in money as an end, they do not share a common legal interest in the means." This is precisely the argument that Mr. Gartman presented to the Bankruptcy Court, which rejected it.  The Court held that the Creditor Group's potentially inconsistent legal theories (*i.e.*, whether Orly held the stolen $32.3 million in her personal capacity, as a quasi-fiduciary, or in part as constructive trustee for Dalia) was each "based on a good faith interpretation of the facts," and that the compromises embodied in the Intercreditor Agreement reconcile those distinct positions. *See* Dkt. 172-1 at 48-50.

Citing *In re Leslie Controls. Inc.*, 437 B.R. 493 (Bankr. D. Del. 2010), the Bankruptcy Court explained that: "the size of the pie and the size of the pieces are separate questions" and that the common-interest doctrine applies where "a legal interest is implicated" even among parties with "separate or overlapping commercial interests." *See* Dkt. 172-1 at 47-48.  Through the Intercreditor Agreement, that Court held, the parties share a common legal interest in recovery of the $32.3 million, and this "does not merely implicate commercial interests among the parties." *Id.* at 49.  Creditors can (and here, did) acknowledge conflicting legal claims while agreeing to cooperate in pursuit of a shared legal objective.  That cooperation is privileged.

Most frivolous is Mr. Gartman's attempt to invalidate, through a discovery dispute, the Intercreditor Agreement.  According to Mr. Gartman, "[w]hen Oldner signed the Intercreditor Agreement, neither Arie nor Orly had received the resignation acceptance documentation …." None of that is true. Arie and Orly received the documents no later than June 17, 2019 at 3 PM. *See* Exh. A.  Thereafter, at 4:59 PM that same day, with Mr. Oldner unquestionably the Trustee, an error was discovered in the Intercreditor Agreement and each party was asked to confirm their agreement to the corrected version.  On June 17, 2019, at 6:01 PM, Mr. Oldner replied: "Dear Sirs: I agree completely. Michael Oldner" confirming his final sign-off. *See* Exh. B.

Lastly, Mr. Gartman closes his letter by falsely claiming that: "[t]he Subpoena Recipients … also waived any privilege by regularly communicating with outside investors regarding their litigation strategy."  Mr. Gartman cites no such communication by any Subpoena Recipient, because none exists. (And the communications he cites by other parties are not privilege waivers.) Where a joint or common interest privilege exists, it "cannot be waived without the consent of all of the parties that share it." *In re Quigley Co., Inc.*, 2009 WL 9034027, *3 (Bankr. S.D.N.Y. Apr. 24, 2009).  The Subpoena Recipients have not consented and do not consent.

EMMET, MARVIN & MARTIN, LLP

Respectfully submitted,

John Dellaportas

cc:  All Counsel of Record [via ECF]

EMMET, MARVIN & MARTIN, LLP

**<u>EXHIBIT A</u>**

EMMET, MARVIN & MARTIN, LLP

| Product Description | Sale Qty | Final Price |
|---|---|---|
| PM Exp 2-Day Flat Rate Env | 1 | $25.50 |

    (Domestic)
    (NORTH MIAMI BEACH, FL  33160)
    (Flat Rate)
    (Signature Waiver)
    (Scheduled Delivery Day)
    (Monday 06/17/2019 03:00 PM)
    (Money Back Guarantee)
    (USPS Tracking #)
    (EE358550755US)

| PM Exp Insurance | 1 | $0.00 |
|---|---|---|

    (Up to $100.00 included)

| Utl Mlr 10.5" x16" | 2 | $2.38 |
|---|---|---|
| First-Class Mail Large Envelope | 1 | $1.15 |

    (Domestic)
    (AUSTIN, TX  78701)
    (Weight:0 Lb 1.90 Oz)
    (Estimated Delivery Date)
    (Tuesday 06/18/2019)

| Certified | 1 | $3.50 |
|---|---|---|

    (@@USPS Certified Mail #)
    (70183090000058269284)

| First-Class Intl Large Envelope | 1 | $3.23 |
|---|---|---|

    (International)
    (Israel)
    (Weight:0 Lb 1.90 Oz)

| Registered | 1 | $16.00 |
|---|---|---|

    (Amount:$0.00)
    (USPS Registered Mail #)
    (RE219275722US)

| Total | | $51.76 |
|---|---|---|
| Cash | | $100.00 |
| Change | | ($48.24) |

EMMET, MARVIN & MARTIN, LLP

**<u>EXHIBIT B</u>**

## John Dellaportas

**From:** Renae Oldner <oldnerrr@sbcglobal.net>
**Sent:** Monday, June 17, 2019 6:01 PM
**To:** Robin Rodrigez; John Dellaportas; sagi genger

Dear Sirs:
I agree completely.
Michael Oldner

On Monday, June 17, 2019, 4:59:35 PM CDT, sagi genger <sagigenger@gmail.com> wrote:

Gentlemen,

In the inter-creditor agreement, we erroneously listed the Orly Genger Trust as the direct benefactor of the third waterfall. In fact, the third waterfall should be Recover Effort Inc. which is wholly owned by the Trust.

Please reply that you agree to this and John Dellaportas will re-circulate.

1