BRAUNHAGEY & BORDEN LLP
San Francisco & New York

Kevin C. Wallace
kwallace@braunhagey.com

July 10, 2026

**VIA ECF and NYSCEF**
The Honorable Valerie Figueredo
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 17A
New York, NY 10007

The Honorable Dakota D. Ramseur
Supreme Court of the State of New York
County of New York, Part 34
60 Centre Street, Courtroom 341
New York, NY 10007

**Re: *Manhattan Safety Maine, Inc. v. Genger*, No. 1:19-cv-5642 (MKV) (VF) (S.D.N.Y.); *Orly Genger v. Michael Oldner*, Index No. 156331/2026 (Sup. Ct., N.Y. County)**

Dear Judge Figueredo:

We are individual counsel for Michael Oldner, the Trustee of the Orly Genger 1993 Trust (the "Trust"). The Trust controls one of the plaintiffs in this action: Recovery Effort, Inc. ("REI"). We write to apprise the Court of the status of a related proceeding now pending in the Supreme Court of the State of New York, and to request that the Court briefly adjourn three upcoming dates in this action—the July 20, 2026 pre-conference submission deadline, the July 21, 2026 hearing on the common interest privilege, and the July 27, 2026 settlement conference—to dates after August 11, 2026. This letter is being filed on the dockets of both this action and the related New York proceeding so that both Courts are apprised of the status of each matter.

On May 18, 2026, Orly Genger, the Trust's beneficiary, commenced a special proceeding against Mr. Oldner in the Supreme Court of the State of New York, County of New York, seeking his removal as Trustee under Section 7-2.6(a) of the Estates, Powers and Trusts Law. *See Orly Genger v. Michael Oldner*, Index No. 156331/2026 (Sup. Ct., N.Y. County) (Ramseur, J.). The following day, the court entered an *ex parte* temporary restraining order that "immediately temporarily restrained [Mr. Oldner] from taking any further action as Trustee of the Orly Trust and on behalf of the Orly Trust without prior notice to the Court and Petitioner and approval by the Court." That restraint remains in effect.

At a hearing on June 26, 2026, the court confirmed the breadth of that restraint. The court explained that, pending its ruling, Mr. Oldner "should do nothing without coming to the Court," adding that it "can't make it simpler than don't do anything. Nothing." June 26, 2026 Hr'g Tr. at 3–4. When counsel asked whether "filing papers in [an] existing proceeding fell in the scope of

the TRO," the court confirmed that it does. *Id.* at 3. Mr. Oldner therefore may take no action as or on behalf of the Trust—including directing the Trust to make filings, or to retain or substitute counsel, in pending litigation—without first obtaining the New York court's leave.

That restraint prevents Mr. Oldner from participating in the upcoming dates in this action. The Court's standing order for the July 27, 2026 settlement conference requires the plaintiff to convey a recent settlement demand, and the defendant to respond, in advance of the conference, and requires that the demand and response be included in the pre-conference submission due July 20, 2026. The Trust prosecutes this action through its wholly owned subsidiary, Recovery Effort, Inc. ("REI"), and only Mr. Oldner, as Trustee, is authorized to formulate and convey the Trust's settlement position. He cannot do so—or authorize any demand, offer, or response on the Trust's behalf—without violating the TRO.

The July 21, 2026 hearing concerns the common interest privilege that the Trust and the other aligned creditor parties assert over their shared communications—a privilege the United States Bankruptcy Court for this District sustained after full briefing and argument. *See In re Genger*, No. 19-13895-JLG (Bankr. S.D.N.Y. Feb. 24, 2021). Defending that privilege at the hearing—whether through submissions, appearances, or directing counsel—is likewise action on the Trust's behalf that Mr. Oldner cannot authorize while the TRO remains in place.

These constraints will likely be short-lived. At the June 26 hearing, Justice Ramseur scheduled oral argument on Ms. Genger's motion for a preliminary injunction for August 11, 2026, and stated that she would endeavor to rule that day: "I'll do my best. I'll try to render a decision that day." June 26, 2026 Hr'g Tr. at 14. That ruling is expected to resolve the threshold questions of whether Mr. Oldner remains Trustee—and thus who is authorized to direct the Trust—and whether the restraint will continue. A brief adjournment of the three dates until after August 11 would allow those questions to be answered and would permit the Trust to participate in this action meaningfully, rather than in name only.

Mr. Oldner raises these circumstances not to delay this action, but because proceeding on the current schedule would, respectfully, prejudice both him and the Trust and its beneficiaries. With the TRO in force and no one presently able to direct the Trust's positions, requiring the Trust to go forward now risks the forfeiture of important rights—including its common interest privilege and its position at the settlement conference—without any opportunity for the Trust to be heard. Nothing in this letter concedes the reach of the New York court's order as to REI or the Trust, and all rights are reserved.

Accordingly, Mr. Oldner respectfully requests that the Court adjourn the July 20, 2026 pre-conference submission deadline, the July 21, 2026 hearing, and the July 27, 2026 settlement conference to dates convenient for the Court after August 11, 2026. Counsel is conferring with the other parties concerning this request and will promptly advise the Court of their respective positions; this is Mr. Oldner's first request to adjourn these dates. We thank the Court for its consideration.

Respectfully submitted,

Kevin C. Wallace

cc: All Counsel of Record (via ECF and NYSCEF)

# ATTACHMENT A

E

At I.A.S. Part 34 of the Supreme Court of the State of New York, held in and for the County of New York at the Courthouse therefore, 60 Centre Street, New York, N.Y., on the 19 day of May, 2026

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PRESENT: HON. HON. DAKOTA D. RAMSEUR J.S.C.
Justice of the Supreme Court

| | |
|---|---|
| **ORLY GENGER,**<br>**Petitioner,**<br>v.<br>**MICHAEL OLDNER,**<br>**Respondent** | **Index No. 156331/2026**<br>~~*Ex. Parte*~~ **ORDER TO SHOW CAUSE WITH T.R.O. IN CIVIL ACTION**<br>MS# 1 Other - Remove Trustee |

Upon the accompanying Affirmation of Exigency of Michael Paul Bowen, dated May 18, 2026, with exhibits, the Affirmation of William B. McManus, dated May 17, 2026, the Verified Petition in this action sworn to by Petitioner Orly Genger, the Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction, and all other prior proceedings before the Court in this matter, and ~~good~~ sufficient cause ~~appearing~~ being alleged therefore~~, it is hereby:~~

LET ~~**ORDERED** that~~, based on Petitioner's showing of Michael Oldner's continuing breaches of fiduciary duties owed to the beneficiaries of the Orly Genger 1993 Trust, Michael Oldner show cause before this Court at IAS Part 34 of the Supreme Court of the State of New York, County of New York, located at 60 Centre Street, New York, New York, on the ~~16~~ 16 day of June ~~[illegible]~~, 2026, or as soon thereafter as counsel can be heard, why, pursuant to Section 7-2.6(a) at 9:30 am

HON. DAKOTA D. RAMSEUR J.S.C.

of the Estates, Power and Trust Law, he should not be removed as trustee of the Orly Genger Trust and replaced by William B. McManus; and, it is further

**ORDERED** that, pending the hearing on this matter, Michael Oldner is hereby immediately temporarily restrained from taking any further action as Trustee of the Orly Trust and on behalf of the Orly Trust without prior notice to the Court and Petitioner and approval by the Court, including without limitation restrained from transferring any Trust assets, documents, or property anywhere; and, it is further

HON. DAKOTA D. RAMSEUR
J.S.C.

JSC

**ORDERED** that service of a copy of this order, the affirmations in support, and all other papers upon which this order is granted shall be made by email upon Oldner's attorneys, Adam Pollock (Adam@pollockcohen.com) and Jerrold Steigman (jsteigman@krantzberman.com) on or before the 20 day of May, 2026 and that such service shall be deemed good and sufficient; and it is further

HON. DAKOTA D. RAMSEUR

and certified return receipt

**ORDERED** that opposition papers, if any, shall be e-filed on NYSCEF and served by email on counsel for petitioner, Michael Paul Bowen (MBowen@hbb-firm.com), on or before the 29 day of May, 2026. reply 6/12/26

ORAL ARGUMENT DIRECTED

J.S.C.
HON. DAKOTA D. RAMSEUR
J.S.C.

**ENTER:**

~~May ___, 2026~~

________________, J.S.C.
HON. DAKOTA D. RAMSEUR
J.S.C.

# ATTACHMENT .

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - CIVIL TERM - PART 34

- - - - - - - - - - - - - - - - - - - - - - -X

ORLY GENGER,

Plaintiff,

- against -

MICHAEL OLDNER,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - -X

INDEX NUMBER: 156331/2026

ORAL ARGUMENT

60 Centre Street
New York, New York
June 26, 2026

B E F O R E:

HONORABLE DAKOTA RAMSEUR,

JUSTICE OF THE SUPREME COURT

A P P E A R A N C E S:

HERSCHMANN BENSON BOWEN
Attorneys for the Plaintiff
96 Perry Street, #b2
New York, New York 10014

BY: MICHAEL BOWEN
DANIEL BENSON, ESQ.

BRAUNHAGEY & BORDEN, LLP
Attorneys for the Defendant
200 Madison Avenue
New York, New York 10016

BY: KEVIN WALLACE, ESQ.
KELSEY DOCHERTY, ESQ.

ANGELA BRIGANTE
SENIOR COURT REPORTER

11:32:42

THE COURT: Start with appearances.

MR. BOWEN: Good morning, Your Honor. Michael Bowen, B-O-W-E-N, and I'm here with my partner, Daniel Benson, who is from the law firm of Herschmann Benson & Bowen and we appear on behalf of petitioner, Orly Genger.

MR. WALLACE: Kevin Wallace and my partner, Kelsey Docherty, on behalf of the respondent, Michael Oldner, O-L-D-N-E-R.

THE COURT: So let me just put something on the record first. I just want to emphasize that the Order to Show Cause was signed and that initial date was June 16th for appearance, on May 29th and then the parties signed the stipulation changing the first appearing date from June 16th to July 21st and extended the time for opposition to June 30th which, of course, it was a stipulation agreement. I only want to start this with a record to say that to the extent that we are here today because clarification was required which is fine, it's always good to get clarification. To maintain the initial dates which I thought I gave ample time for opposition and I did so knowing, based on -- this is a serious matter, and I just want to give you the time that's required and necessary for you to have a resolution. So with that said, we can continue with what's on today.

Counselor, you can make your record.

MR. WALLACE: Certainly. Thank you, Your Honor. The relief we're requesting today pursuant to the terms of the TRO is we provided notice that Mr. Oldner would like to respond to a sanction motion pending in the bankruptcy court on behalf of an entity REI that is controlled by the trust and those opposition papers are due July 3rd.

THE COURT: Yes.

MR. WALLACE: This doesn't involve dissipation of any assets, it doesn't involve any transfers, it doesn't involve any issues of the assets of the trust is limited to taking action in a pending legal proceeding where the sanction motion was brought by the petitioner here and it seems that there's no reason for this to be signed upon default, that there is no one in position to respond and so we would ask the Court's permission to respond to those papers on July 3rd. And to the extent we're seeking clarification, it was unclear as to whether something like filing papers in the existing proceeding fell in the scope of the TRO. We appreciate your clarification that it does and in the abundance of caution is why we ask Your Honor for relief to be able to do that.

THE COURT: So just we're clear: The way I took my TRO to be is that you should do nothing without coming to the Court, we could discuss it because the very nature, the issue of the case is how your client conducts business as a

11:36:44 trust basically the criminal has a conflict of interest. I can't make it simpler than don't do anything. Nothing. Don't. You shouldn't do anything. You should come to the Court.

11:37:04 MR. WALLACE: And that's why I'm here, Your Honor, to ask for permission.

11:37:08 THE COURT: Make that clear. Is there anything else we should discuss? You want to tell me when you're going or how you want to go about complying on -- what's the date, July 3rd you say?

11:37:22 MR. BOWEN: July 3rd.

11:37:22 MR. WALLACE: July 3rd.

11:37:23 THE COURT: How would you like to proceed?

11:37:26 MR. WALLACE: We would like relief from the TRO in order for REI to respond to the sanction pleading that are due on July 3rd.

11:37:34 THE COURT: Okay. I can't ask you if you think your client has a conflict of interest, but do you want to respond to that?

11:37:40 MR. BOWEN: Yes, Your Honor. Our position is REI is owned an controlled by the trust and the only person that can act on behalf of REI in response to a court proceeding or deadline is the trustee of the trust and that's Mr. Oldner now and Mr. Oldner is under the restraint of the TRO not to do anything without first giving notice to us and

11:38:04 getting approval from the Court. That's been our position all along. When they asked us whether REI could respond, what our position was with respect to this July 3rd deadline, we told them it depends on what your response is because if your response is honoring your obligation, your fiduciary duties to my client who is the beneficiary of the trust, then that's something we would maybe not have an issue with and we could jointly present it to Your Honor for approval, but we don't know what their position is going to be in responding to the sanction motion. They haven't told us. So unless we know we're not in a position to give our position and I don't think the Court would be in a position to rule on it. The second point --

11:38:53 THE COURT: That's what I mean. You should discuss when am I going to get this document because July 3rd is around the corner. I'm not here as of Wednesday. So either you can get an adjournment --

11:39:04 MR. BOWEN: Which we wouldn't object to it. If they want to give an adjournment in the bankruptcy proceeding deadline, we'll get that.

11:39:09 THE COURT: I only need to get involved if there's an issue with what they submit. So when can you provide what you're going to submit?

11:39:20 MR. WALLACE: Well, Your Honor, as you're aware, we're also responding to the PI motion in this case.

THE COURT: Again, to my initial point, why would you ask for an adjournment knowing you had this July 3rd date come up? You see what I mean? You put yourself in the situation. My point is what would you like me to do? I'm asking we know our situation. What would you like me to do? You need an adjournment because you can't -- not you, but your client.

MR. WALLACE: Your Honor, what I'm hearing you say is you don't -- until you resolve the issues in the PI, you don't want that -- it's not a matter of simply getting permission, you don't want the response, I think an adjournment on the bankruptcy piece would alleviate the issue. We would finish the hearing in front of Your Honor on the preliminary.

THE COURT: I think that's the best way to proceed.

MR. BOWEN: We agree with that as well, Your Honor. One other point I would like to make, though it's clear on the record, because we've said this privately to counsel, I'm not sure, it was current counsel, this is the fourth set of lawyers --

THE COURT: Well, the nature of this type of case when you have these types of allegations, it's going to be difficult to get an attorney.

MR. BOWEN: Well, one of our issues, Judge, as far as we know, the current lawyer that's representing REI which

is the company owned by the trust also represents one of the creditors that has claims against the trust. That lawyer has a clear conflict of interest, so we would need to know whether that lawyer is still representing REI for purposes of responding to the pending sanction motion in bankruptcy court.

THE COURT: I agree.

MR. BOWEN: We don't have an answer to that either.

THE COURT: I agree. There's also the issue of who's paying for those lawyers.

MR. BOWEN: Exactly. Exactly.

THE COURT: This is the nature of how these cases go.

MR. WALLACE: Your Honor, it sounds like though the clear solution is put off the response on the sanction motion in the bankruptcy court. I would propose two weeks after Your Honor makes a decision because then there will either be -- Mr. Oldner will be the trustee or there will be something else happening.

MR. BOWEN: As long as you're saying two weeks after the decision your presentation of a request for permission to file the opposition; is that what you're saying?

MR. WALLACE: I think, I would say until the judge reaches a decision on the preliminary injunction motion, two

weeks after we will know either there's rules around Mr. Oldner's activities or there is no pending restriction during the pendency of this case. We will just know whether there's a preliminary injunction in place.

MR. BOWEN: I don't see a problem with that, with that timing. We'll have to talk to the bankruptcy court.

MR. WALLACE: Yes, obviously.

THE COURT: Yes. I don't know two weeks after I make a decision, I don't know when that is. What's your date that you know how far out can you go for the bankruptcy? I'm on vacation in August. I want to be fair. I mean, you all have vacation plans as well, so I just want to be fair to everybody's time.

MR. BOWEN: There are other parties responding to the sanction motion, not just REI. Obviously we would agree to an extension only for REI in the bankruptcy court. And in that case, given the seriousness of the allegations before the bankruptcy court, we wouldn't want to put it off too long or indefinitely. I think maybe the better way to proceed is to set a deadline via which the respondent can present to the Court what it is it intends to do in response to that motion and answer some of these questions, who is the lawyer and how is that lawyer being paid and then whatever reasonable amount of time for Your Honor to decide whether to approve that or not, that would set the deadline

for responding in bankruptcy court. So maybe --

THE COURT: I guess what I'm saying is I understands that I have a decision to make, but I don't know why you can't still provide the information. It's not like you wouldn't know anyway. Everybody's involved with the trust.

MR. BOWEN: Right.

THE COURT: It's kind of going to be public document once filed, so even though this preliminary injunction is pending, just give the July 3rd bankruptcy, whatever you need to file over. You're not prejudiced. Again --

MR. BOWEN: Two weeks from July 3rd.

THE COURT: The only prejudice is in fact I have to say don't file that which I wouldn't do before I make a decision. Without knowing if it's imminent because whatever you file, really make that decision. You know what I mean?

MR. WALLACE: Your Honor, I'm just trying to wrap my head around what the issue would be about getting approval trying to get consent from the opposing party on the sanction motion to file a response and just what the legal issues are around the Court approving the substance of a filing.

THE COURT: Your case that you cite specifically on point to me, but to the extent that I don't want to make the

11:44:42 situation worse with the allegations, again, these are just allegations, I don't know if they're true, but to the extent they're allegations and it's a trust and there's an allegation of conflict of interest, we're going to have to explore that, and I already know what they're saying. I see their papers, I see their exhibits. I need to see how you're going to say something that will say oh, no, this is not necessary, they don't meet the elements.

11:45:09 MR. WALLACE: I agree, Your Honor. We agree they don't meet the elements. These allegations of conflict of interest have been made since 2019. They've been in cases since 2022, but we'll address that in the substance of our response to this pleading. The issue is just can Mr. Oldner direct how REI responds to the sanctions motion. And I think there was another proposal from counsel providing time to let this case advance before that happens.

11:45:46 THE COURT: Okay.

11:45:48 MR. WALLACE: I would say that I think the time should be extended for Mr. Oldner. I won't speak for the other party in the sanctions motion, but the time should be extended to Mr. Oldner and REI since the connection is that he's being -- the sanction is for him and some of his actions relate to REI, they're just intertwined if they're going to be treated separately because of this proceeding, we should know that.

11:46:13 THE COURT: Well, don't you think that they should be in light of the --

11:46:16 MR. WALLACE: No, I don't, Your Honor, because there is no conflict of interest. There is no problem. The issues underlying this are is that the trust has debtors and the fundamental question here is there is thirty-two million dollars that is sitting outside the trust and the fundamental dispute right now is whether that money should be in the trust or out of the trust.

11:46:41 THE COURT: Right. I actually read the papers exactly to that point.

11:46:46 MR. WALLACE: Yes. And so what they're not -- what is in discussion the question of like is the intercreditor agreements a problem depends on whether or not the intercreditor is legitimate and whether there are real debts and we'll litigate here and also being litigated in a lot of other courts.

11:47:06 THE COURT: I think -- I'm not -- I think that's over. It would be the decision to even make those debts. I think that's in terms of the timeline of events. It's kind of like you already started at the middle. That's the nature of these types of cases.

11:47:24 MR. WALLACE: Correct.

11:47:25 THE COURT: It requires just initial decision -- it's never an easy process, and to the extent that I

understand, this decision has to be made, I don't mind making decision, but it's not -- it doesn't start where you just started like where we are in bankruptcy court, it literally requires analysis almost on how you got there, frankly.

MR. WALLACE: I agree, Your Honor. I literally go through the four items that have fiduciary duty.

THE COURT: Which started before you probably got to bankruptcy court.

MR. WALLACE: Right, the creation of the intercreditor agreement.

THE COURT: The whole allegation. What was that, MSM, the attorneys. There's so many things going on here. Anyway, let me just give dates. The dates you picked, your new date was July 30th? When was your date that you were coming back again?

MR. BOWEN: We're coming back on July 21st.

MR. WALLACE: July 21st.

THE COURT: Okay.

MR. BOWEN: The 21st.

THE COURT: So two weeks. You wanted after that. Let me see if that's even possible for me.

MR. BOWEN: What I was suggesting, Judge, we keep the July 21st date. By that date they put in whatever they need to put in to justify what they want to do in response

11:48:49 to the bankruptcy sanctions motion.

11:48:51 THE COURT: I understand.

11:48:54 MR. WALLACE: I'm sorry, Your Honor?

11:48:56 THE COURT: I understand your request. I hear you
11:48:59 need the decision first, so before you exchange the
11:49:02 documents, you want to file in Federal Court.

11:49:06 MR. WALLACE: Correct.

11:49:07 THE COURT: Yes. So let me get to -- so the 21st
11:49:10 of July. You're here the 21st of July.

11:49:13 MR. WALLACE: I think that's the return date.

11:49:16 THE COURT: I'm going to put over oral arguments.
11:49:19 I have to put it around that time, so looking for a Tuesday
11:49:22 around that time period. I guess you guys don't have
11:49:36 vacation.

11:49:36 MR. BOWEN: Not this year.

11:49:56 THE COURT: I'm trying to give myself time to do
11:49:58 the research. I like to do my own research on top of your
11:50:03 research.

11:50:04 MR. BOWEN: We actually may have a conflict on the
11:50:08 28th. You're right.

11:50:10 THE COURT: August 4th?

11:50:16 MR. BOWEN: I'm on trial that week, Judge.

11:50:18 THE COURT: Okay.

11:50:22 MR. BOWEN: The 3rd.

11:50:22 THE COURT: What are you saying, August 11th?

11:50:24 MR. BOWEN: I could do August 11th.

11:50:28 THE COURT: Mr. Thompson, is that an option for us?

11:50:32 COURT CLERK: Yes.

11:50:32 THE COURT: The 11th. What time is available in the afternoon on August 11th?

11:50:36 COURT CLERK: 2:30.

11:50:38 THE COURT: All right. Do I have more than a half block though? Can I go to 3:30 because I probably have a lot of questions.

11:50:46 COURT CLERK: We have something on at 3 that could be pushed back.

11:50:50 THE COURT: Okay. So August 11th at 2:30. That's just the oral argument. Okay?

11:50:58 MR. WALLACE: Understood, Your Honor.

11:50:59 THE COURT: All right. Can I give you my e-mail address so you can e-mail your papers? Just makes it easier for me. It's D, my name is Dakota, so that's dramseur@nycourt.gov. And I just want to emphasize that it's the S-E-U. It's not French, but it sounds French, so yes, that's the plan. I'll get your papers. I'll do my best. I'll try to render a decision that day. If I feel like I have a hurdle, what I'll do is I'll e-mail you if I have any concerns.

11:51:51 So is that a good plan for everybody?

11:51:54 MR. WALLACE: That works, Your Honor.

11:51:55 THE COURT: Is that proactive enough so you're not, not you, but your clients are held up too much?

11:52:00 MR. WALLACE: Correct. That's fine.

11:52:01 THE COURT: Okay.

11:52:01 MR. BOWEN: I just want a point of clarification: So the deadline for the opposition on the preliminary injunction is staying the same?

11:52:08 THE COURT: Everything is the same schedule. I'm trying to get the right information where I am in terms of my calendar because I have many more cases that I have to do that predate you.

11:52:18 MR. BOWEN: I understand, Judge. And so in the meantime before the August 11th date, if they want to make a submission on behalf of REI and the bankruptcy court, they would do it in order for that to be decided before August 11th; is that the idea?

11:52:41 MR. WALLACE: Our preference would be I think it is legally and logistically difficult to have another party and another court in between the parties and its filing, so I would propose the sanctions briefing for Mr. Oldner and REI happen after August 11th.

11:53:03 MR. BOWEN: That's fine with us. If the bankruptcy court agrees. Not Mr. Oldner, just REI.

11:53:11 MR. WALLACE: I was trying to express to you what the issues were that we're trying to get at because that was

11:53:25 one of the conditions we were talking about for the timing here. I think the thing that we would say is the timing for Mr. Oldner and REI are joined on the bankruptcy. We think it's reasonable to delay for both.

11:53:42 MR. BOWEN: We don't take that position because the sanctions motion that's pending against Mr. Oldner is against him personally. It doesn't have anything to do --

11:53:49 THE COURT: So that's why I was alluding to that earlier, but, you know.

11:53:55 MR. BOWEN: It's only him acting on behalf of REI. And I guess the way the proceedings are we should get to bankruptcy court to see if we can get REI alone an adjournment from the July 3rd date and once we know what that date is from the bankruptcy court, then counsel for REI in this court can make a presentation and follow the court instructions on how to get approval to do anything while in advance of that new deadline. That would be, to me, the obvious way to proceed.

11:54:25 THE COURT: Well, I don't think it's the obvious way to proceed on consent. I just think that what's going to end up is being a lot.

11:54:34 MR. BOWEN: Understood.

11:54:34 (Whereupon, continued on next page.)

11:54:35 THE COURT: To the extent you don't seem to want to
11:54:37 consent to that, we'll just have to go play by play. And I
11:54:41 wish you well in the Federal Court. Now off the record.

(Discussion is held off the record.)

* * * *

The foregoing is hereby certified to be a true and accurate transcript of the proceedings as transcribed from the stenographic notes.

* * * *

ANGELA BRIGANTE
Angela Brigante
SENIOR COURT REPORTER

**1**

**10014** [1] - 1:17
**10016** [1] - 1:22
**11th** [8] - 13:25, 14:1, 14:4, 14:5, 14:12, 15:13, 15:16, 15:21
**156331/2026** [1] - 1:5
**16th** [2] - 2:11, 2:13

**2**

**200** [1] - 1:21
**2019** [1] - 10:11
**2022** [1] - 10:12
**2026** [1] - 1:10
**21st** [7] - 2:14, 12:17, 12:18, 12:20, 12:24, 13:8, 13:9
**26** [1] - 1:10
**28th** [1] - 13:20
**29th** [1] - 2:12
**2:30** [2] - 14:6, 14:12

**3**

**3** [1] - 14:10
**30th** [2] - 2:15, 12:15
**34** [1] - 1:1
**3:30** [1] - 14:8
**3rd** [13] - 3:6, 3:16, 4:10, 4:11, 4:12, 4:16, 5:3, 5:15, 6:2, 9:10, 9:13, 13:24, 16:13

**4**

**4th** [1] - 13:21

**6**

**60** [1] - 1:9

**9**

**96** [1] - 1:17

**A**

**able** [1] - 3:21
**abundance** [1] - 3:20
**accurate** [1] - 17:5
**act** [1] - 4:22
**acting** [1] - 16:10
**action** [1] - 3:11
**actions** [1] - 10:23
**activities** [1] - 8:2
**address** [2] - 10:12, 14:16
**adjournment** [6] - 5:17, 5:19, 6:2, 6:6, 6:12, 16:13
**advance** [2] - 10:16, 16:17
**afternoon** [1] - 14:5
**agree** [7] - 6:16, 7:7, 7:9, 8:15, 10:9, 12:6
**agreement** [2] - 2:15, 12:11
**agreements** [1] - 11:14
**agrees** [1] - 15:23
**allegation** [2] - 10:4, 12:12
**allegations** [6] - 6:22, 8:17, 10:1, 10:2, 10:3, 10:10
**alleviate** [1] - 6:12
**alluding** [1] - 16:8
**almost** [1] - 12:4
**alone** [1] - 16:12
**amount** [1] - 8:24
**ample** [1] - 2:20
**analysis** [1] - 12:4
**Angela** [1] - 17:10
**ANGELA** [2] - 1:25, 17:10
**answer** [2] - 7:8, 8:22
**anyway** [2] - 9:5, 12:14
**appear** [1] - 2:5
**appearance** [1] - 2:12
**appearances** [1] - 2:1
**appearing** [1] - 2:13
**appreciate** [1] - 3:19
**approval** [4] - 5:1, 5:9, 9:20, 16:16
**approve** [1] - 8:25
**approving** [1] - 9:22
**argument** [1] - 14:13
**ARGUMENT** [1] - 1:9
**arguments** [1] - 13:11
**assets** [2] - 3:9, 3:10
**attorney** [1] - 6:23
**attorneys** [1] - 12:13
**Attorneys** [2] - 1:16, 1:21
**August** [9] - 8:11, 13:21, 13:25, 14:1, 14:5, 14:12, 15:13, 15:15, 15:21
**available** [1] - 14:4
**Avenue** [1] - 1:21
**aware** [1] - 5:24

**B**

**b2** [1] - 1:17
**bankruptcy** [19] - 3:4, 5:19, 6:12, 7:5, 7:16, 8:6, 8:11, 8:16, 8:18, 9:1, 9:10, 12:3, 12:9, 13:1, 15:14, 15:22, 16:3, 16:12, 16:14
**based** [1] - 2:21
**behalf** [6] - 2:5, 2:7, 3:5, 4:22, 15:14, 16:10
**beneficiary** [1] - 5:6
**BENSON** [2] - 1:16, 1:19
**Benson** [2] - 2:4
**best** [2] - 6:15, 14:21
**better** [1] - 8:19
**between** [1] - 15:19
**block** [1] - 14:8
**BORDEN** [1] - 1:20
**Bowen** [2] - 2:3, 2:5
**BOWEN** [30] - 1:16, 1:18, 2:2, 2:3, 4:11, 4:20, 5:18, 6:16, 6:24, 7:8, 7:11, 7:20, 8:5, 8:14, 9:7, 9:13, 12:17, 12:20, 12:23, 13:15, 13:19, 13:22, 13:24, 14:1, 15:5, 15:12, 15:22, 16:5, 16:10, 16:22
**BRAUNHAGEY** [1] - 1:20
**briefing** [1] - 15:20
**BRIGANTE** [2] - 1:25, 17:10
**Brigante** [1] - 17:10
**brought** [1] - 3:12
**business** [1] - 3:25
**BY** [2] - 1:18, 1:23

**C**

**calendar** [1] - 15:10
**case** [7] - 3:25, 5:25, 6:21, 8:3, 8:17, 9:24, 10:16
**cases** [4] - 7:12, 10:11, 11:22, 15:10
**caution** [1] - 3:20
**Centre** [1] - 1:9
**certainly** [1] - 3:1
**certified** [1] - 17:4
**changing** [1] - 2:13
**cite** [1] - 9:24
**CIVIL** [1] - 1:1
**claims** [1] - 7:2
**clarification** [5] - 2:17, 2:19, 3:17, 3:19, 15:5
**clear** [5] - 3:22, 4:7, 6:17, 7:3, 7:15
**CLERK** [3] - 14:3, 14:6, 14:10
**client** [4] - 3:25, 4:18, 5:6, 6:7
**clients** [1] - 15:2
**coming** [3] - 3:23, 12:16, 12:17
**company** [1] - 7:1
**complying** [1] - 4:9
**concerns** [1] - 14:23
**conditions** [1] - 16:1
**conducts** [1] - 3:25
**conflict** [7] - 4:1, 4:18, 7:3, 10:4, 10:10, 11:4, 13:19
**connection** [1] - 10:21
**consent** [3] - 9:20, 16:20, 16:24
**continue** [1] - 2:24
**controlled** [2] - 3:5, 4:21
**corner** [1] - 5:16
**correct** [3] - 11:23, 13:7, 15:3
**counsel** [4] - 6:18, 6:19, 10:15, 16:14
**counselor** [1] - 2:25
**COUNTY** [1] - 1:1
**course** [1] - 2:15
**court** [17] - 3:4, 4:22, 7:6, 7:16, 8:6, 8:16, 8:18, 9:1, 12:3, 12:9, 15:14, 15:19, 15:23, 16:12, 16:14, 16:15
**COURT** [55] - 1:1, 1:13, 1:25, 2:1, 2:9, 3:7, 3:22, 4:7, 4:13, 4:17, 5:14, 5:21, 6:1, 6:15, 6:21, 7:7, 7:9, 7:12, 8:8, 9:2, 9:8, 9:14, 9:24, 10:17, 11:1, 11:10, 11:18, 11:24, 12:8, 12:12, 12:19, 12:21, 13:2, 13:4, 13:8, 13:11, 13:16, 13:21, 13:23, 13:25, 14:2, 14:3, 14:4, 14:6, 14:7, 14:10, 14:12, 14:15, 15:1, 15:4, 15:8, 16:8, 16:19, 16:23, 17:11
**Court** [8] - 3:24, 4:4, 5:1, 5:12, 8:21, 9:22, 13:6, 16:25
**Court's** [1] - 3:15
**courts** [1] - 11:17
**creation** [1] - 12:10
**creditors** [1] - 7:2
**criminal** [1] - 4:1
**current** [2] - 6:19, 6:25

**D**

**Dakota** [1] - 14:17
**DAKOTA** [1] - 1:12
**Daniel** [1] - 2:4
**DANIEL** [1] - 1:19
**date** [13] - 2:11, 2:13, 4:10, 6:3, 8:10, 12:15, 12:24, 13:10, 15:13, 16:13, 16:14
**dates** [3] - 2:19, 12:14
**deadline** [7] - 4:23, 5:4, 5:20, 8:20, 8:25, 15:6, 16:17
**debtors** [1] - 11:5
**debts** [2] - 11:15, 11:19
**decide** [1] - 8:24
**decided** [1] - 15:15
**decision** [13] - 7:17, 7:21, 7:25, 8:9, 9:3, 9:16, 9:17, 11:19, 11:24, 12:1, 12:2, 13:5, 14:21
**default** [1] - 3:14
**Defendant** [2] - 1:7, 1:21
**delay** [1] - 16:4
**difficult** [2] - 6:23, 15:18
**direct** [1] - 10:14
**discuss** [3] - 3:24, 4:8, 5:14
**discussion** [2] - 11:13, 17:1
**dispute** [1] - 11:8
**dissipation** [1] - 3:8
**Docherty** [1] - 2:7
**DOCHERTY** [1] - 1:23
**document** [2] - 5:15, 9:9
**documents** [1] - 13:6
**dollars** [1] - 11:7
**dramseur@nycourt.gov** [1] - 14:18
**due** [2] - 3:6, 4:16
**during** [1] - 8:3
**duties** [1] - 5:6
**duty** [1] - 12:7

**E**

**e-mail** [3] - 14:15, 14:16, 14:22
**easier** [1] - 14:16
**easy** [1] - 11:25
**either** [4] - 5:16, 7:8, 7:18, 8:1

**elements** [2] - 10:8, 10:10
**emphasize** [2] - 2:10, 14:18
**end** [1] - 16:21
**entity** [1] - 3:5
**ESQ** [3] - 1:19, 1:23, 1:23
**events** [1] - 11:20
**exactly** [3] - 7:11, 11:11
**exchange** [1] - 13:5
**exhibits** [1] - 10:6
**existing** [1] - 3:18
**explore** [1] - 10:5
**express** [1] - 15:24
**extended** [3] - 2:14, 10:19, 10:21
**extension** [1] - 8:16
**extent** [6] - 2:17, 3:16, 9:25, 10:2, 11:25, 16:23

## F

**fact** [1] - 9:14
**fair** [2] - 8:11, 8:13
**far** [2] - 6:24, 8:10
**Federal** [2] - 13:6, 16:25
**fell** [1] - 3:18
**fiduciary** [2] - 5:6, 12:7
**file** [6] - 7:22, 9:11, 9:15, 9:17, 9:21, 13:6
**filed** [1] - 9:9
**filing** [3] - 3:18, 9:23, 15:19
**fine** [3] - 2:18, 15:3, 15:22
**finish** [1] - 6:13
**firm** [1] - 2:4
**first** [4] - 2:10, 2:13, 4:25, 13:5
**follow** [1] - 16:15
**foregoing** [1] - 17:4
**four** [1] - 12:7
**fourth** [1] - 6:19
**frankly** [1] - 12:5
**French** [2] - 14:19
**front** [1] - 6:13
**fundamental** [2] - 11:6, 11:8

## G

**GENGER** [1] - 1:3
**Genger** [1] - 2:5
**given** [1] - 8:17
**guess** [3] - 9:2, 13:13, 16:11
**guys** [1] - 13:13

## H

**half** [1] - 14:7
**head** [1] - 9:19
**hear** [1] - 13:4
**hearing** [2] - 6:8, 6:13
**held** [2] - 15:2, 17:1
**hereby** [1] - 17:4
**HERSCHMANN** [1] - 1:16
**Herschmann** [1] - 2:4
**Honor** [20] - 2:2, 3:1, 3:20, 4:5, 4:20, 5:8, 5:24, 6:8, 6:13, 6:16, 7:14, 7:17, 8:24, 9:18, 10:9, 11:3, 12:6, 13:3, 14:14, 14:25
**HONORABLE** [1] - 1:12
**honoring** [1] - 5:5
**hurdle** [1] - 14:22

## I

**idea** [1] - 15:16
**imminent** [1] - 9:16
**indefinitely** [1] - 8:19
**INDEX** [1] - 1:4
**information** [2] - 9:4, 15:9
**initial** [4] - 2:11, 2:19, 6:1, 11:24
**injunction** [4] - 7:25, 8:4, 9:10, 15:7
**instructions** [1] - 16:16
**intends** [1] - 8:21
**intercreditor** [3] - 11:13, 11:15, 12:11
**interest** [6] - 4:1, 4:18, 7:3, 10:4, 10:11, 11:4
**intertwined** [1] - 10:23
**involve** [3] - 3:8, 3:9, 3:10
**involved** [2] - 5:21, 9:5
**issue** [7] - 3:25, 5:8, 5:22, 6:13, 7:9, 9:19, 10:13
**issues** [6] - 3:10, 6:9, 6:24, 9:22, 11:5, 15:25
**items** [1] - 12:7

## J

**joined** [1] - 16:3
**jointly** [1] - 5:8
**judge** [1] - 7:24
**Judge** [4] - 6:24, 12:23, 13:22, 15:12
**July** [19] - 2:14, 3:6, 3:16, 4:10, 4:11, 4:12, 4:16, 5:3, 5:15, 6:2, 9:10, 9:13, 12:15, 12:17, 12:18, 12:24, 13:9, 16:13
**June** [4] - 1:10, 2:11, 2:13, 2:15
**JUSTICE** [1] - 1:13
**justify** [1] - 12:25

## K

**keep** [1] - 12:23
**KELSEY** [1] - 1:23
**Kelsey** [1] - 2:7
**KEVIN** [1] - 1:23
**Kevin** [1] - 2:6
**kind** [2] - 9:8, 11:20
**knowing** [3] - 2:21, 6:2, 9:16

## L

**law** [1] - 2:4
**lawyer** [5] - 6:25, 7:2, 7:4, 8:23
**lawyers** [2] - 6:20, 7:10
**legal** [2] - 3:11, 9:22
**legally** [1] - 15:18
**legitimate** [1] - 11:15
**light** [1] - 11:2
**limited** [1] - 3:10
**literally** [2] - 12:4, 12:6
**litigate** [1] - 11:16
**litigated** [1] - 11:16
**LLP** [1] - 1:20
**logistically** [1] - 15:18
**looking** [1] - 13:12

## M

**Madison** [1] - 1:21
**mail** [3] - 14:15, 14:16, 14:22
**maintain** [1] - 2:19
**matter** [2] - 2:21, 6:10
**mean** [4] - 5:14, 6:3, 8:12, 9:17
**meantime** [1] - 15:13
**meet** [2] - 10:8, 10:10
**MICHAEL** [2] - 1:6, 1:18
**Michael** [2] - 2:3, 2:8
**middle** [1] - 11:21
**million** [1] - 11:6
**mind** [1] - 12:1
**money** [1] - 11:8
**morning** [1] - 2:2
**motion** [14] - 3:4, 3:12, 5:10, 5:25, 7:5, 7:16, 7:25, 8:15, 8:22, 9:21, 10:14, 10:20, 13:1, 16:6
**MR** [55] - 2:2, 2:6, 3:1, 3:8, 4:5, 4:11, 4:12, 4:14, 4:20, 5:18, 5:24, 6:8, 6:16, 6:24, 7:8, 7:11, 7:14, 7:20, 7:24, 8:5, 8:7, 8:14, 9:7, 9:13, 9:18, 10:9, 10:18, 11:3, 11:12, 11:23, 12:6, 12:10, 12:17, 12:18, 12:20, 12:23, 13:3, 13:7, 13:10, 13:15, 13:19, 13:22, 13:24, 14:1, 14:14, 14:25, 15:3, 15:5, 15:12, 15:17, 15:22, 15:24, 16:5, 16:10, 16:22
**MSM** [1] - 12:13

## N

**name** [1] - 14:17
**nature** [4] - 3:24, 6:21, 7:12, 11:22
**necessary** [2] - 2:22, 10:8
**need** [7] - 5:21, 6:6, 7:3, 9:11, 10:6, 12:25, 13:5
**never** [1] - 11:25
**NEW** [2] - 1:1, 1:1
**new** [2] - 12:15, 16:17
**New** [6] - 1:9, 1:17, 1:22
**notes** [1] - 17:6
**nothing** [2] - 3:23, 4:2
**notice** [2] - 3:3, 4:25
**NUMBER** [1] - 1:4

## O

**O-L-D-N-E-R** [1] - 2:8
**object** [1] - 5:18
**obligation** [1] - 5:5
**obvious** [2] - 16:18, 16:19
**obviously** [2] - 8:7, 8:15
**OF** [4] - 1:1, 1:1, 1:13
**Oldner** [1] - 2:8
**OLDNER** [1] - 1:6
**oldner** [11] - 3:3, 4:24, 7:18, 10:13, 10:19, 10:21, 15:20, 15:23, 16:3, 16:6
**oldner's** [1] - 8:2
**once** [2] - 9:9, 16:13
**one** [5] - 3:14, 6:17, 6:24, 7:1, 16:1
**opposing** [1] - 9:20
**opposition** [5] - 2:14, 2:20, 3:6, 7:22, 15:6
**option** [1] - 14:2
**ORAL** [1] - 1:9
**oral** [2] - 13:11, 14:13
**Order** [1] - 2:10
**order** [2] - 4:15, 15:15
**ORLY** [1] - 1:3
**Orly** [1] - 2:5
**outside** [1] - 11:7
**own** [1] - 13:17
**owned** [2] - 4:21, 7:1

## P

**paid** [1] - 8:23
**papers** [7] - 3:6, 3:16, 3:18, 10:6, 11:10, 14:16, 14:20
**PART** [1] - 1:1
**parties** [3] - 2:12, 8:14, 15:19
**partner** [2] - 2:3, 2:6
**party** [3] - 9:20, 10:20, 15:18
**paying** [1] - 7:10
**pendency** [1] - 8:3
**pending** [6] - 3:4, 3:11, 7:5, 8:2, 9:10, 16:6
**period** [1] - 13:13
**permission** [4] - 3:15, 4:6, 6:11, 7:22
**Perry** [1] - 1:17
**person** [1] - 4:21
**personally** [1] - 16:7
**petitioner** [2] - 2:5, 3:12
**PI** [2] - 5:25, 6:9
**picked** [1] - 12:14
**piece** [1] - 6:12
**place** [1] - 8:4
**Plaintiff** [2] - 1:4, 1:16
**plan** [2] - 14:20, 14:24
**plans** [1] - 8:12
**play** [2] - 16:24
**pleading** [2] - 4:15, 10:13

**point** [7] - 5:13, 6:1, 6:4, 6:17, 9:25, 11:11, 15:5
**position** [9] - 3:14, 4:20, 5:1, 5:3, 5:9, 5:11, 5:12, 16:5
**possible** [1] - 12:22
**predate** [1] - 15:11
**preference** [1] - 15:17
**prejudice** [1] - 9:14
**prejudiced** [1] - 9:11
**preliminary** [5] - 6:14, 7:25, 8:4, 9:9, 15:6
**present** [2] - 5:8, 8:21
**presentation** [2] - 7:21, 16:15
**privately** [1] - 6:18
**proactive** [1] - 15:1
**problem** [3] - 8:5, 11:4, 11:14
**proceed** [5] - 4:13, 6:15, 8:20, 16:18, 16:20
**proceeding** [5] - 3:11, 3:18, 4:22, 5:20, 10:24
**proceedings** [2] - 16:11, 17:5
**process** [1] - 11:25
**proposal** [1] - 10:15
**propose** [2] - 7:16, 15:20
**provide** [2] - 5:22, 9:4
**provided** [1] - 3:3
**providing** [1] - 10:15
**public** [1] - 9:8
**purposes** [1] - 7:4
**pursuant** [1] - 3:2
**pushed** [1] - 14:11
**put** [8] - 2:9, 6:3, 7:15, 8:18, 12:24, 12:25, 13:11, 13:12

**Q**

**questions** [2] - 8:22, 14:9

**R**

**RAMSEUR** [1] - 1:12
**reaches** [1] - 7:25
**read** [1] - 11:10
**real** [1] - 11:15
**really** [1] - 9:17
**reason** [1] - 3:13
**reasonable** [2] - 8:24, 16:4
**record** [6] - 2:10, 2:16, 2:25, 6:18, 16:25, 17:1
**REI** [19] - 3:5, 4:15, 4:20, 4:22, 5:2, 6:25, 7:4, 8:15, 8:16, 10:14, 10:21, 10:23, 15:14, 15:20, 15:23, 16:3, 16:10, 16:12, 16:14
**relate** [1] - 10:23
**relief** [3] - 3:2, 3:21, 4:14
**render** [1] - 14:21
**REPORTER** [2] - 1:25, 17:11
**representing** [2] - 6:25, 7:4
**represents** [1] - 7:1
**request** [2] - 7:21, 13:4
**requesting** [1] - 3:2
**required** [2] - 2:18, 2:22
**requires** [2] - 11:24, 12:4
**research** [3] - 13:17, 13:18
**resolution** [1] - 2:23
**resolve** [1] - 6:9
**respect** [1] - 5:3
**respond** [6] - 3:4, 3:14, 3:15, 4:15, 4:19, 5:2
**respondent** [2] - 2:7, 8:20
**responding** [5] - 5:10, 5:25, 7:5, 8:14, 9:1
**responds** [1] - 10:14
**response** [9] - 4:22, 5:4, 5:5, 6:11, 7:15, 8:21, 9:21, 10:13, 12:25
**restraint** [1] - 4:24
**restriction** [1] - 8:2
**return** [1] - 13:10
**rule** [1] - 5:13
**rules** [1] - 8:1

**S**

**S-E-U** [1] - 14:19
**sanction** [9] - 3:4, 3:12, 4:15, 5:10, 7:5, 7:15, 8:15, 9:21, 10:22
**sanctions** [5] - 10:14, 10:20, 13:1, 15:20, 16:6
**schedule** [1] - 15:8
**scope** [1] - 3:18
**second** [1] - 5:13
**see** [7] - 6:3, 8:5, 10:5, 10:6, 12:22, 16:12
**seeking** [1] - 3:16
**seem** [1] - 16:23
**SENIOR** [2] - 1:25, 17:11
**separately** [1] - 10:24
**serious** [1] - 2:21
**seriousness** [1] - 8:17
**set** [3] - 6:19, 8:20, 8:25
**Show** [1] - 2:11
**signed** [3] - 2:11, 2:12, 3:13
**simpler** [1] - 4:2
**simply** [1] - 6:10
**sitting** [1] - 11:7
**situation** [3] - 6:4, 6:5, 10:1
**solution** [1] - 7:15
**sorry** [1] - 13:3
**sounds** [2] - 7:14, 14:19
**specifically** [1] - 9:24
**start** [3] - 2:1, 2:16, 12:2
**started** [3] - 11:21, 12:3, 12:8
**STATE** [1] - 1:1
**staying** [1] - 15:7
**stenographic** [1] - 17:6
**still** [2] - 7:4, 9:4
**stipulation** [2] - 2:13, 2:15
**Street** [2] - 1:9, 1:17
**submission** [1] - 15:14
**submit** [2] - 5:22, 5:23
**substance** [2] - 9:22, 10:12
**suggesting** [1] - 12:23
**SUPREME** [2] - 1:1, 1:13

**T**

**TERM** [1] - 1:1
**terms** [3] - 3:2, 11:20, 15:9
**THE** [50] - 1:1, 1:13, 2:1, 2:9, 3:7, 3:22, 4:7, 4:13, 4:17, 5:14, 5:21, 6:1, 6:15, 6:21, 7:7, 7:9, 7:12, 8:8, 9:2, 9:8, 9:14, 9:24, 10:17, 11:1, 11:10, 11:18, 11:24, 12:8, 12:12, 12:19, 12:21, 13:2, 13:4, 13:8, 13:11, 13:16, 13:21, 13:23, 13:25, 14:2, 14:4, 14:7, 14:12, 14:15, 15:1, 15:4, 15:8, 16:8, 16:19, 16:23
**they've** [1] - 10:11
**thirty** [1] - 11:6
**thirty-two** [1] - 11:6
**Thompson** [1] - 14:2
**timeline** [1] - 11:20
**timing** [3] - 8:6, 16:1, 16:2
**today** [3] - 2:17, 2:24, 3:2
**took** [1] - 3:22
**top** [1] - 13:17
**transcribed** [1] - 17:5
**transcript** [1] - 17:5
**transfers** [1] - 3:9
**treated** [1] - 10:24
**trial** [1] - 13:22
**TRO** [5] - 3:3, 3:19, 3:23, 4:14, 4:25
**true** [2] - 10:2, 17:4
**trust** [14] - 3:5, 3:10, 4:1, 4:21, 4:23, 5:7, 7:1, 7:2, 9:6, 10:3, 11:5, 11:7, 11:9
**trustee** [2] - 4:23, 7:18
**try** [1] - 14:21
**trying** [6] - 9:18, 9:20, 13:16, 15:9, 15:24, 15:25
**Tuesday** [1] - 13:12
**two** [7] - 7:16, 7:20, 7:25, 8:8, 9:13, 11:6, 12:21
**type** [1] - 6:21
**types** [2] - 6:22, 11:22

**U**

**unclear** [1] - 3:17
**under** [1] - 4:24
**underlying** [1] - 11:5
**understood** [2] - 14:14, 16:22
**unless** [1] - 5:11
**up** [3] - 6:3, 15:2, 16:21

**V**

**vacation** [3] - 8:11, 8:12, 13:14
**via** [1] - 8:20

**W**

**WALLACE** [29] - 1:23, 2:6, 3:1, 3:8, 4:5, 4:12, 4:14, 5:24, 6:8, 7:14, 7:24, 8:7, 9:18, 10:9, 10:18, 11:3, 11:12, 11:23, 12:6, 12:10, 12:18, 13:3, 13:7, 13:10, 14:14, 14:25, 15:3, 15:17, 15:24
**Wallace** [1] - 2:6
**Wednesday** [1] - 5:16
**week** [1] - 13:22
**weeks** [6] - 7:16, 7:20, 8:1, 8:8, 9:13, 12:21
**whole** [1] - 12:12
**wish** [1] - 16:25
**works** [1] - 14:25
**worse** [1] - 10:1
**wrap** [1] - 9:18

**Y**

**year** [1] - 13:15
**YORK** [2] - 1:1, 1:1
**York** [6] - 1:9, 1:17, 1:22
**yourself** [1] - 6:3